# Illinois Official Reports

## Appellate Court

---

### *People v. Brakes*, 2021 IL App (1st) 181737

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TARIK BRAKES, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-18-1737 |
| Filed<br>Modified upon<br>denial of rehearing | August 30, 2021<br><br>September 20, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 15-CR-990(01), 17-CR-09666, 17-CR-09667; the Hon. Timothy Joseph Joyce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Adrienne N. River, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Daniel Piwowarczyk, Assistant State's Attorneys, of counsel), for the People. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1      In three separate indictments, the State charged Tarik Brakes with armed robbery of Reginald Williams and Steve Martin, attempted armed robbery of Demacio Bailey and Demario Bailey, and first degree murder for the shooting death of Demario. Three other codefendants—Isaiah Penn, Carlos Johnson, and Tarik's brother, Deafro Brakes—were charged with similar offenses. During Tarik's jury trial, the trial court allowed the State to introduce a photo of him, taken two months before the charged offenses, showing Tarik holding a gun next to Johnson, who is contorting his hands in what Johnson's counsel described as a gang sign. After hearing the remaining evidence against Tarik, the jury found him guilty on all relevant charges. The trial court sentenced him to an aggregate term of 45 years in prison.

¶ 2      Tarik challenges the admission of the photograph of him with Johnson, arguing (i) it was irrelevant, (ii) it served as a back door for prejudicial gang evidence, and (iii) whether relevant or not, it was more prejudicial than probative. We agree with Tarik that the photograph was irrelevant because the State provided no link between the photograph and the charged offenses. But we find the error in admitting the photo harmless. The State introduced the photograph through one witness and never mentioned it again. Moreover, the evidence against Tarik was strong enough to override any possible effect the photograph may have had on the jury.

¶ 3      Tarik, a minor at the time of the offenses, also challenges his sentence. First, after *People v. Buffer*, 2019 IL 122327, his 45-year sentence is an unconstitutional *de facto* life sentence that the trial court did not intend to impose. And secondly, if his sentence is constitutional, then the truth-in-sentencing law requiring him to serve 100% of his first degree murder sentence is not. The State agrees that the trial court did not intend to impose a life sentence but argues that, because Tarik is entitled to good-conduct credit for the attempted armed robbery offenses, he will only serve 39 of 45 years under *Buffer*'s 40-year ceiling. This court has repeatedly rejected the State's request to consider good-conduct credit in this context (*People v. Peacock*, 2019 IL App (1st) 170308), but after oral argument, the Illinois Supreme Court decided *People v. Dorsey*, 2021 IL 123010, and overruled *Peacock* and its progeny. See *id.* ¶ 1 ("a statutory scheme that affords a juvenile an opportunity to be released from prison after serving 40 years or less of the term imposed does not constitute a *de facto* life sentence").

¶ 4      Now bound by *Dorsey*, we conclude Tarik did not receive a *de facto* life sentence, and his constitutional challenge to the term of years of his sentence must fail. *Dorsey* also undermines Tarik's as-applied challenge to the statutory sentencing scheme requiring him to serve 100% of his 33-year first degree murder sentence. He argues the mandatory scheme violates *Miller* because it does not give him a chance to demonstrate rehabilitation before the term of his sentence expires. *Dorsey* reaffirms the principle that the relevant sentencing scheme need only provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation *before he spends more than 40 years in prison*." (Emphasis added and internal quotation marks omitted.) *Id.* ¶ 65. Nothing requires the General Assembly to guarantee an opportunity for release before 40 years. See *id.* ¶¶ 53-54. Adding on the consecutive sentences

for which he may receive good time credit, his sentence still falls below *Buffer*'s 40-year line.

¶ 5                                                    Background

¶ 6          Because Tarik does not challenge the sufficiency of the evidence against him, we briefly recount the narrative of the offenses, including detail relevant to our analysis.

¶ 7          Tarik, Deafro, Johnson, and Penn met at Tarik's house. There, they discussed committing robberies. Tarik had a "block gun," a semiautomatic .380-caliber handgun that anyone on the block could use. The group went to a viaduct on 63rd Street in Chicago.

¶ 8          Once there, the group robbed Williams. A boy, eventually identified as Tarik, pointed a gun at him and members of the group took Williams's phone and some money. The group then crossed the viaduct and robbed Martin. Martin also identified Tarik as the person who pulled out a gun and took Martin's phone from his pocket. After taking the phone, the group left but came back briefly to have Martin unlock his phone.

¶ 9          Two members of the group then came up to Demario and Demacio, who were walking together through the viaduct. One of the group grabbed Demario, and the other grabbed Demacio. Demario was able to break free and hit the person holding Demacio. A boy wearing a camouflage jacket walked up, and a gunshot went off. Demario fell to the ground and later died from a gunshot wound. Penn, one of the codefendants, testified that Tarik shot Demario.

¶ 10        Mercedes Austin and Ciera Wilson were walking on 63rd Street near the viaduct when they saw a group of four boys running from the viaduct. Though neither could see their faces, Austin said one of the boys wore a camouflage jacket. Of the offenders who robbed Martin, he described the one with the gun as having a chipped tooth and wearing a camouflage jacket. Williams described his gun-wielding assailant similarly—having a chipped tooth and black camouflage pants and jacket.

¶ 11        Williams and Martin both went to a nearby gas station after the robberies. Police eventually arrived with Johnson and a man named Jermaine Jones for a show-up identification. Williams identified both as involved in the robbery—one took his phone and one had the gun. Martin only identified Johnson as a robbery participant. Sergeant Shawn Ryan later had Williams view a lineup containing Johnson and Jones. Williams again identified them, but Jones was later released because "it was determined he was excluded as a suspect." In a separately conducted photo array, Williams signed his name and identified Tarik as the person who held the gun and had a chipped tooth. Martin also viewed a photo array; he identified Tarik as the person with the chipped tooth. Demacio also viewed several photo arrays but was unable to identify, though he did point out Tarik in court.

¶ 12        Shortly after Demario's murder, Demacio identified Tracy Norwood, David Phillips, and Leshawn Norwood as three of the offenders. Officers obtained security footage from a nearby high-rise residence, which showed the three leaving the elevator at various times more than 30 minutes after the robberies and murder. The three were never charged.

¶ 13        During Penn's testimony, which largely corroborated the victims', the State attempted to admit a Facebook photo showing Tarik and Johnson together. The trial court had earlier denied Tarik's motion *in limine* seeking to exclude the photo. It shows Tarik holding a gun that is pointing toward the camera. Tarik stands next to Johnson, who is manipulating his hands in a way that Johnson's counsel argued was a gang sign. The photo was posted about two months before the robberies and murder. The trial court allowed Penn to testify about the photo, and

he identified both Tarik and Johnson. He then explained that Tarik was holding a different type of gun than the murder weapon.

¶ 14 The only physical evidence recovered was a .380-caliber shell casing that had been ejected from a semiautomatic firearm. The gun was never found.

¶ 15 The jury found Tarik guilty of Demario's murder, attempted armed robbery of Demario, and armed robbery of both Martin and Williams. Tarik filed a motion for a new trial, arguing, in part, that the trial court erred in allowing the State to introduce the Facebook photo. The trial court denied the motion.

¶ 16 After hearing evidence and arguments at sentencing, the trial court found that "nobody set out to murder Demario Bailey or anyone else." The court added that "evidence for rehabilitation is not insubstantial," given Tarik's and Johnson's strides in pursuing an education while incarcerated. The court avoided a *de facto* life sentence by declining to impose a discretionary firearm enhancement on Tarik. Instead, the trial court sentenced Tarik to a 33-year prison sentence for first degree murder. That sentence had to run consecutively with a six-year sentence for attempted armed robbery, which also had to run consecutively with two concurrent six-year sentences for armed robbery. Tarik's aggregate sentence, then, is 45 years. The trial court denied Tarik's motion to reconsider his sentence—in part on eighth amendment grounds.

¶ 17 Analysis

¶ 18 Tarik challenges his conviction on one ground: the trial court erroneously admitted the Facebook photograph from two months before the offenses showing Tarik with a gun and Johnson flashing an alleged gang sign. We agree the photograph is irrelevant, and so the trial court erred in admitting it. The error was harmless, however, given the State's limited use of the photograph and the otherwise sufficient evidence.

¶ 19 As to his sentence, *Dorsey* instructs us that Tarik did not receive a *de facto* life sentence, and his constitutional challenge fails.

¶ 20 *Photographic Evidence*

¶ 21 Tarik argues the trial court erroneously admitted a photograph showing him holding a gun next to Johnson who appears to be making an alleged gang sign with his hands. Tarik claims the photograph is irrelevant because no trial evidence connected the gun shown to the gun used in the offense. He also contends the photo was unduly prejudicial, as it shows Tarik behaving in a "menacing" way and implies his and Johnson's membership in a gang. We agree the photograph is irrelevant to the State's case and admitting it into evidence was error. But the error was harmless.

¶ 22 Relevant evidence is admissible unless more prejudicial than probative. *People v. Starks*, 2014 IL App (1st) 121169, ¶ 60. Relevant evidence tends to "make any fact of consequence to the action more or less probable than it would be without the evidence." *Id.* We review a trial court's evidentiary ruling for an abuse of discretion. *People v. Williams*, 262 Ill. App. 3d 808, 819 (1994).

¶ 23 Evidence that a defendant possessed a physical object is admissible if "there is proof to connect it to the defendant and to the crime charged." *Id.* at 821 (citing *People v. Free*, 94 Ill. 2d 378, 415 (1983)). Both connections are required, though it is enough that the physical

evidence be "suitable for the commission of the crime." *Id.* No one disputes that Tarik is the person in the photograph holding a gun. But, the parties disagree about the sufficiency of the connection between the gun in the photograph and the gun Tarik used during the robberies and murder.

¶ 24    The State offers several reasons on relevancy, but none stand up to scrutiny. First, the State claims the photo shows Tarik and Johnson "had the kind of relationship that would extend to shared participation in the charged offenses." The State relies on *People v. Manuel*, 294 Ill. App. 3d 113 (1997), which is distinguishable. There, we upheld as relevant a series of previous drug transactions between the defendant and a buyer that were "not part of the same episode" under review. *Id.* at 124. True, we said the evidence was relevant to show the willing "illicit relationship" between the defendant and his buyer but because the defendant had attempted to argue that he had been " 'ensnared' " into selling drugs. *Id.* Evidence of the previous relationship also explained why the defendant had delivered additional narcotics beyond the previously agreed-to amount. *Id.*

¶ 25    The photograph here serves no similar explanatory function. Witnesses testified that both Tarik and Johnson participated in the relevant offenses. Penn, one of the codefendants, testified about how the plan to commit robberies came to be. Unlike *Williams*, where the defendant made allusions to entrapment and delivered an otherwise unexplainable amount of drugs, here the jury did not need help reconciling contradictions or seemingly unexplainable portions of the State's case. The narrative was straightforward: a group of teenagers planned to commit, and did commit, robberies and killed one of their victims as they did so. Absent a claim of other crimes—a theory the State disavows—what Tarik was doing two months before, and with whom, made no fact in consequence more or less probable.

¶ 26    The State also claims the photograph "corroborated the identifications of [Tarik] as the gunman." We fail to see how. That Tarik possessed a gun two months before the shooting says nothing about the witnesses' ability to accurately identify the shooter they saw. Tarik's gun possession says similarly little about whether he would use a gun to commit a crime. In *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 52, on which the State relies, we upheld the admission of evidence of uncharged crimes where the defendant had previously brandished or fired a gun of the same caliber as the gun he fired during the offense under review.

¶ 27    Nothing in the photo of Tarik holding a gun suggests he had, or would ever, use a gun in the manner required to commit robbery or murder. We also reject the State's argument that the similarity in weapon types between the gun in the photo and the gun Tarik used in the robberies and murder bolsters the photo's relevance. Unlike *Hensley*, no evidence was adduced on its caliber, and unlike *Hensley*, Penn testified the gun in the photo was not the gun used in the shooting. All we have is visual similarity and the description of both guns as "semiautomatic." These comparisons are too broad to be probative.

¶ 28    Having found the photo irrelevant, we conclude it was inadmissible. Accordingly, we need not determine whether it contains improper gang evidence or whether the trial court's prejudice analysis was improperly truncated. Because Tarik preserved this claim of error, we turn instead to the question of whether the error in admitting the photo was harmless beyond a reasonable doubt. *E.g.*, *People v. Donahue*, 2014 IL App (1st) 120163, ¶ 109. The State bears the burden to show that it was. *Id.*

¶ 29    An error can be harmless (i) where the error did not contribute to defendant's conviction, (ii) where the other evidence overwhelmingly supports defendant's conviction, or (iii) where

the excluded evidence would have been duplicative or cumulative. *People v. Lerma*, 2016 IL 118496, ¶ 33. Our supreme court has often resolved cases by finding that all three tests are satisfied. See *id.*; see also *People v. King*, 2020 IL 123926, ¶ 40. Several cases from this court establish, consistent with logic we think, that a finding of harmlessness under either of the three approaches suffices. See *People v. Ortiz*, 2017 IL App (1st) 142559, ¶ 44 (finding exclusion of evidence harmless where it did not contribute to conviction even though it would not have been cumulative or duplicative); *People v. Anderson*, 2017 IL App (1st) 122640, ¶ 90 (same). We find the error did not contribute to Tarik's conviction.

¶ 30 We agree with Tarik that the evidence is not overwhelming. Though Tarik was eventually identified consistently as the member of the group with the gun, Williams's and Demacio's identifications suffer from initial inconsistencies—both identified people as offenders who officers never charged. But even though the evidence was not overwhelming, the photograph played a small role in the State's case. The State introduced the photo during codefendant Penn's testimony, and he did no more than lay the foundation for its admission. The State never mentioned the photo to the jury before that and never mentioned it again. We also think the photo ended up being a minor part of Penn's overall testimony—remember the jury listened to him substantially corroborate the victims' testimony and place a gun in Tarik's hand.

¶ 31 Considering the totality of the evidence, the admission of the photo amounted to no more than a passing reference. Though irrelevant, the Facebook photograph did not contribute to Tarik's conviction. We affirm the judgment of guilt.

¶ 32 *Sentencing*

¶ 33 Tarik challenges his sentence, primarily arguing that the trial court imposed a 45-year sentence—a *de facto* life sentence according to *Buffer*, 2019 IL 122327—though disclaiming any intent to do so. The State agrees that the trial court did not intend to impose a *de facto* life sentence. Still, the State argues Tarik's sentence does not qualify because he is eligible for up to 50% good conduct credit for the sentences imposed on the nonmurder offenses. The State acknowledges this court's many decisions rejecting reliance on good-conduct credit in determining whether a sentence constitutes a *de facto* life sentence (*e.g.*, *Peacock*, 2019 IL App (1st) 170308), but urges us not to follow them. In light of our supreme court's recent decision in *Dorsey*, 2021 IL 123010, we agree with the State and find Tarik's sentence does not constitute a *de facto* life sentence.

¶ 34 The basic principles are well settled. The United States Supreme Court has found all mandatory life sentences without the possibility of parole for juvenile offenders violate the eighth amendment. *Miller v. Alabama*, 567 U.S. 460, 479 (2012). The Illinois Supreme Court applied *Miller* to *de facto* life sentences (*People v. Reyes*, 2016 IL 119271, ¶ 10 (*per curiam*)) and discretionary life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40). Our supreme court also set the maximum sentence a juvenile can receive without being considered a *de facto* life sentence at 40 years. *Buffer*, 2019 IL 122327, ¶ 42. Now we add *Dorsey* to the juvenile sentencing canon, which holds that a juvenile defendant's *opportunity* for release after 40 or fewer years is the only relevant consideration, whether that is the sentence the trial court imposed or not. *Dorsey*, 2021 IL 123010, ¶ 64.

¶ 35 The State correctly argues that Tarik is only guaranteed to be in prison for 39 years of his 45-year sentence. The trial court sentenced Tarik to 33 years in prison (served at 100%) for murder, which runs consecutively with a 6-year sentence (served at 50%) for one count of

- 6 -

attempted armed robbery, which runs consecutively to three other concurrent 6-year sentences (also served at 50%) for other counts of attempted armed robbery. Thus, 33 plus 3 plus 3 equals 39.

¶ 36 Our task, then, is to decide whether we account for good-conduct credit. This court has repeatedly held that we do not. *E.g.*, *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 53 (collecting cases). Though immaterial, the State argues that no other district of our appellate court has followed suit; that argument is no longer true. See *People v. Simental*, 2021 IL App (2d) 190649, ¶ 20 ("agree[ing] with the reasoning" of *Peacock* and its progeny).

¶ 37 The State contends that *Peacock* and similar cases ignore the "opportunity for release" language in cases like *Reyes*, 2016 IL 119271, ¶ 10. The court in *Dorsey* agreed. The supreme court focused on the statutory sentencing scheme as a whole. It found that the "due process" procedures baked into the good-conduct credit provisions guaranteed a defendant credit "as long as it is not revoked because he [or she] commits a disciplinary offense." *Dorsey*, 2021 IL 123010, ¶ 61. According to *Dorsey*, the defendant's apparent "power to shorten his [or her] sentence" offers an opportunity for release. *Id.* ¶ 54. Whether the defendant earns that credit and spends more than 40 years in prison is, after *Dorsey*, irrelevant. See *id.* ¶ 58.

¶ 38 Under these principles, we have but one option: affirm Tarik's 45-year sentence. Because the consecutive six-year sentences are eligible for 50% credit, they give him the "power" to behave and potentially achieve release before he has served 40 years.

¶ 39 Our conclusion about Tarik's term of years sentence also defeats his constitutional challenge to the statute requiring him to serve 100% of his first degree murder sentence. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2020). Tarik argues this statute is unconstitutional as applied to him because it does not allow him to demonstrate rehabilitative potential and be released before the term of his sentence expires. He relies almost exclusively on *People v. Othman*, 2019 IL App (1st) 150823, ¶¶ 91-109 (*Othman I*), where we found the challenged statute unconstitutional. But the Illinois Supreme Court later entered a supervisory order instructing this court to vacate the portions of its opinion addressing the defendant's sentence. *People v. Othman*, 2020 IL App (1st) 150823-B, ¶¶ 3-5 (*Othman II*).

¶ 40 The State points us to the Fourth District's decision in *People v. Pacheco*, 2013 IL App (4th) 110409, ¶¶ 58, 60, where our court rejected a similar challenge to section 3-6-3(a)(2)(i) because the truth-in-sentencing consequences of a defendant's sentence do not render the substantive sentence unconstitutional. We would agree with the analysis in *Pacheco* anyway; *Dorsey* all but compels us to do so.

¶ 41 We first say a word about the precedential value of *Othman I*. Even assuming the reasoning in *Othman I* survived the supervisory order, we would not find it persuasive. The analysis was *dicta* because the court found the defendant's 55-year sentence substantively unconstitutional under the proportionate penalties clause. *Othman I*, 2019 IL App (1st) 150823, ¶¶ 77-86. So the court's further analysis of the constitutionality of section 3-6-3(a)(2)(i) was not necessary to its judgment. And, as the court in *Pacheco* explained, the remedy for a juvenile defendant who receives a *de facto* life sentence is a challenge to the substantive sentence, not the statute requiring the sentence to be served at 100%. *Cf. Pacheco*, 2013 IL App (4th) 110409, ¶ 58 (explaining, defendant's 20-year sentence not equivalent to life without parole and so sentence is not unconstitutional merely because it must be served at 100%).

¶ 42 But, assuming further that *Othman I* is sound precedent, *Dorsey* effectively overrules it. As we have explained, *Dorsey* shifts the focus of the inquiry from the sentence imposed to the

actual time a defendant must serve. See *Dorsey*, 2021 IL 123010, ¶ 65 (requiring possibility of release before juvenile defendant surpasses 40 years in prison). In other words, a juvenile defendant's sentence (whether served at 100%, 85%, or 50%) may be subject to a constitutional challenge only if it will keep the juvenile in prison for more than 40 years. *Id.* (relying on *Buffer*, 2019 IL 122327). Tarik's sentence allows for possible release after 39 years, just beneath *Buffer*'s ceiling, and so is constitutional even if Tarik serves part of his sentence at 100%.

¶ 43    Finally, Tarik argues that applying section 3-6-3(a)(2)(i) to his sentence violates the proportionate penalties clause, relying on *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*). There, the juvenile defendant's sentence offended our constitution based on a confluence of three factors: (i) one statutory provision required trial of the juvenile defendant in adult court, (ii) another statute allowed the juvenile offender to be convicted on a theory of accountability without regard to his actual conduct, and (iii) the sentencing statute required a sentence of natural life without giving the trial court discretion to consider the facts of the case. *Id.* at 340-41. *Leon Miller* is distinguishable in two material ways. First, Tarik was convicted as the actual shooter, and the trial court accounted for his culpability. Second, after *Dorsey*, Tarik is not serving the equivalent of a life sentence. Under those circumstances, section 3-6-3(a)(2)(i) is not unconstitutional.

¶ 44    If Tarik's sentence violates the proportionate penalties clause, it is not because he had to serve part of it at 100%. As *Pacheco* hinted, if a 100% sentence is unconstitutional or an abuse of discretion, it follows from the term of years as substantively unreasonable. *Cf. Pacheco*, 2013 IL App (4th) 110409, ¶ 58. Because Tarik only challenged his sentence as unconstitutional (either as an unconstitutional life sentence or based on the applicability of the truth-in-sentencing statute), we do not evaluate the term of years sentence for its substantive reasonableness under the proportionate penalties clause and express no opinion on that issue.

¶ 45    In a petition for rehearing, Tarik argues we overlooked an alternative basis on which to vacate his sentence. He points us to his claim that the trial court's sentencing findings were insufficient under section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a)(1)-(9) (West 2020)). We acknowledge our original opinion did not address this argument, and on further review we find it unpersuasive.

¶ 46    Even when sentencing under section 5-4.5-105, the trial court is not required to announce "each and every factor that it considers in rendering a sentence." *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74. At sentencing, the trial court repeatedly referred to most of the factors in section 5-4.5-105. We quote a portion of the findings below and insert the relevant citations where they apply:

> "Clearly, these are juveniles. They were under the age of 18 at this time [(730 ILCS 5/5-4.5-105(a)(1) (West 2020))]. It did not see[m] to me that any of these persons were subjected to outside pressure [(*id.* § 5-4.5-105(a)(2))]. There was no older gang structure that was motivating them or ordering them to go out and do this.
>
> Indicated that their family life was perhaps not perfect throughout their young lives at this point, but there was nothing so traumatic or so horrid that they were put on some irrevocable track [(*id.* § 5-4.5-105(a)(3))].
>
> The potential for rehabilitation or evidence for rehabilitation is not insubstantial [(*id.* § 5-4.5-105(a)(4))]. It's showed by the fact they have not been in trouble with the law, with the court system prior to this [(*id.* § 5-4.5-105(a)(8))]. It's also shown by the

efforts to engage in education while they have been locked up both in the juvenile detention center and in Cook County Jail. It's clear from the certificates presented that they are making good faith efforts to seek to get educated under the circumstances where they don't have to.

At this time there doesn't seem to be any cognitive difficulties [(*id.* § 5-4.5-105(a)(1))] *** and then there is the circumstances of the offense which I've already indicated are beyond compelling [(*id.* § 5-4.5-105(a)(5))]."

For Tarik, the trial court considered his role in the offense when rejecting the applicability of the firearm enhancements. See 730 ILCS 5/5-4.5-105(a)(6), (b) (West 2020).

¶ 47    The trial court sufficiently considered the factors in section 5-4.5-105, expressly citing the statute and making findings under all but one subsection (*id.* § 5-4.5-105(a)(7)). We cannot find error due to the trial court having failed to specifically mention one of the factors.

¶ 48    Affirmed.