2022 IL App (1st) 200919-U
No. 1-20-0919
Order filed September 19, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 10 CR 4302(02) |
| ROBERT SCHULTZ, | ) ) ) ) | The Honorable William G. Gamboney, Judge, presiding. |
| Defendant-Appellant. | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Justice Coghlan concurred in the judgment.
Justice Pucinski specially concurred, joined by Justice Hyman.

**ORDER**

¶ 1    *Held*: Trial court judgment summarily dismissing Schultz's post-conviction petition affirmed.

¶ 2    Petitioner, Robert Schultz, pled guilty to first degree murder and accepted a 25-year prison sentence. At the time of the offense, Schultz was 17 years old. He did not file post-plea motions or pursue a direct appeal. Eventually, Schultz filed a *pro se* post-conviction petition contending that he stated a gist of a constitutional claim that, because he must serve 100% of his sentence, the Truth-in-Sentencing Act is unconstitutional as applied to him.

¶ 3    We affirm. Requiring a juvenile offender to serve 100% of a nonlife sentence for murder does not violate *Miller v. Alabama*, 567 U.S. 460 (2012) or the eighth amendment, and Schultz's sentence falls within the 40-year threshold *of People v. Buffer*, 2019 IL 122327.

¶ 4                              Background

¶ 5    The State charged Robert Schultz with 68 counts of first-degree murder and two counts of aggravated discharge of a firearm in the death of Carlton Ewing. The State amended Count two to remove the firearm allegation that would have mandated an additional 25-year sentence. That same day, Schultz agreed to enter a negotiated guilty plea to the amended count of first-degree murder.

¶ 6    The plea's factual basis established that, on August 17, 2009, 17-year-old Schultz used a dangerous weapon to kill Ewing. Schultz was a recruit for the Latin Kings. Jesus Zuniga, whom Schultz had known for three years, informed Schultz that August 17th was a "Hood Day." On Hood Day, Latin Kings members would look for rival gang members. The plan called for Zuniga to alert Schultz to suspect members of a rival gang, Gangster Disciple Killers (GDK) and for Schultz to come out of the gangway and use the weapon Zuniga provided. Schultz was in the gangway when he heard someone say, "GDK."  Schultz came out of the gangway and used the weapon, killing Ewing.

¶ 7    Before Schultz entered his plea, he waived his right to trial and a pre-sentence investigation report. The trial court informed Schultz that the sentencing range for first degree murder was 20 to 60 years, served at 100 percent, including three years of mandatory supervised release.

¶ 8    After admonishing Shultz, the trial court found that Schultz understood the nature of the charges against him and possible penalties, made the plea freely and voluntarily, and a factual basis existed for the plea. The court accepted Schultz's plea and entered a judgment of guilty.

¶ 9    Based on the parties' agreement, the trial court sentenced Schultz to 25 years in prison with three years of mandatory supervised release. Schultz did not move to withdraw his plea and did not take a direct appeal.

¶ 10    Eight years later, Schultz filed a *pro se* petition for post-conviction relief. Schultz alleged his sentence violated the United States and Illinois constitutions for two reasons: (i) the provision of the Truth-In-Sentencing Act (730 ILCH 5/3-6-3(a)(2)(i)) requires him to serve his complete sentence without the opportunity to earn good conduct credit, and (ii) the trial court did not consider trauma experienced in his youth and his potential for rehabilitation.

¶ 11    In a written order, the trial court summarily dismissed the petition as "frivolous and patently without merit." The court found that the Eighth Amendment protections stemming from *Miller* inapplicable as Schultz received a discretionary 25-year sentence that did not amount to *de facto* life without the possibility of parole and fell below the line established in *Buffer*. Moreover, the trial court found that the provision of the Truth-In-Sentencing Act requiring a defendant found guilty of first-degree murder to serve 100 percent of the sentence repeatedly had been held constitutional.

¶ 12                                        Analysis

¶ 13    Schultz argues the trial court erred when it dismissed his post-conviction petition at the first stage of proceedings, which raised constitutional challenges to his 25-year sentence for first-degree murder. Schultz alleges that although the trial court rejected his argument that his sentence violated the eighth amendment, the court did not consider that the truth-in-sentencing scheme violated the proportionate penalties clause as applied to him. Specifically, Schultz contends that section 6-3(a)(2)(1) of the Illinois Code of Corrections, requiring him to serve 100 percent of his

sentence, violates the proportionate penalties clause because the trial court did not consider Schultz's youth and potential for rehabilitation.

¶ 14                    *Post-Conviction Legal Principles and Standard of Review*

¶ 15    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*) provides a method for defendants to assert that their convictions resulted from a substantial denial of their rights under the United States Constitution, Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A post-conviction proceeding has three stages. *People v. Harris*, 224 Ill. 2d 115, 125 (2007). At the first stage, the court reviews the post-conviction petition and may dismiss the petition only if the court determines it either is frivolous or patently without merit. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001); 725 ILCS 5/122-2.1(a)(2) (West 2018). A frivolous or patently without merit petition "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12.

¶ 16    To survive dismissal, a petition must present a "gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d. 410, 418 (1996), citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988). Construed liberally, the petition must present a limited amount of detail, and the defendant does not need to set out the claim in its entirety. *Edwards*, 197 Ill. 2d at 244. We review a court's decision to dismiss a post-conviction petition *de novo*. *Id.* at 247.

¶ 17                         *Relevant Juvenile Legal Principles*

¶ 18    The eighth amendment prohibits "cruel and unusual punishments" (U.S. Const., amend VIII) and applies to states through the fourteenth amendment (U.S Const., amend XIV). *Roper v. Simmons*, 543 U.S. 551, 560 (2005). Not only does this prohibition include inherently barbaric penalties but also disproportionate penalties. *People v. Lusby*, 2020 IL 12406, ¶ 32 (citing Graham *v. Florida*, 560 U.S. 48, 59 (2010). To comply with the eighth amendment, sentences must be

"graduated and proportioned." *Roper*, 543 U.S. at 560. A genuine risk of disproportionate punishment exists when the offender is a juvenile and the offense a serious one. *People v. Holman*, 2017 IL 120655, ¶ 33.

¶ 19    Beginning in 2005, the United States Supreme Court acknowledged that juvenile offenders are constitutionally different from adult defendants regarding sentencing. *People v. Jones*, 2021 IL 126432, ¶43. In *Roper*, *Graham*, and *Miller*, the Court concluded that youth matters in sentencing. *Roper* held that the eighth amendment bars capital punishment for juvenile offenders. *Roper*, 543 U.S. at 568. *Graham* held that a life sentence without the possibility of parole for juvenile offenders convicted of non-homicide crimes violates the eighth amendment. *Graham*, 560 U.S. at 83. And *Miller* extended this constitutional ban and held that the eighth amendment prohibits mandatory life sentences for juveniles who commit homicide. *Miller v. Alabama*, 567 U.S. 460, 489 (2012). Recognizing that "children are constitutionally different from adults" (*id.* at 471), a court must have the opportunity to consider mitigating circumstances before imposing a life sentence without the possibility of parole on a juvenile offender. *Id.* at 476, 489. The court later held *Miller* applies retroactively. *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Recently, in *Jones v. Mississippi*, the United States Supreme Court reaffirmed that before imposing a discretionary life term on a juvenile offender, the court must consider the *Miller* factors. *Jones*, 2021 IL 126432, ¶ 43 (citing *Jones v. Mississippi*, 593 U.S. ___ (2021)).

¶ 20    Given these cases, the Illinois Supreme Court has developed its own evolving jurisprudence regarding *Miller*-related sentencing claims. In *Reyes*, our supreme court expanded *Miller*'s application to include a *de facto* life sentence. *People v. Reyes*, 2016 IL 119271, ¶ 9. The *Reyes* court, "that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation." *Id.*

*Holman* concluded that mandatory or discretionary life sentences imposed on juvenile offenders violate the eighth amendment and are disproportionate unless the sentencer considers youth and its attendant characteristics. *Holman*, 2017 IL 120655, ¶ 40. Accordingly, the *Holman* court held that *Miller* applies to discretionary sentences of life without parole for juvenile offenders. *Id.* In *Buffer*, our supreme court concluded a sentence that exceeds 40 years constitutes a *de facto* life sentence for juvenile defendants and violates the eighth amendment. *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41. Under *Buffer*, a prison sentence of 40 years or less does not constitute a *de facto* life sentence in violation of the eighth amendment because it provides juvenile offenders a meaningful opportunity to obtain release based on maturity and rehabilitation. *Id.* ¶ 41.

¶ 21                    *Schultz's Claims Were Not Waived by His Guilty Plea*

¶ 22    Schultz's petition alleges he was subject to an unfair proceeding under *Miller*, where the court did not consider his youth and rehabilitative potential at sentencing. The State argues Schultz's guilty plea waived *Miller* claims. While the trial court's order and Schultz's brief preceded the supreme court's decision in *People v. Jones*, 2021 IL 126432, the State contends *Jones* is dispositive. We find it distinguishable.

¶ 23    In *Jones*, the defendant, then 16 years old, was charged with multiple offenses, including first-degree murder. *Jones*, *Id.* ¶ 3. In 2000, the defendant pled guilty to first-degree murder and was sentenced to 50 years in prison. *Id.* ¶ 4-5. The trial judge found the defendant made the plea knowingly and voluntarily, *Id.* ¶ 5. The defendant waived the preparation of a PSI. *Id.*

¶ 24    The defendant later sought leave to file a successive post-conviction petition, arguing that his guilty plea and judgment predated *Miller* and the mandatory statutory sentencing scheme that applied to him was void as to juveniles. *Id.* ¶7. The trial court denied the motion, and the appellate court affirmed. *Id.* ¶¶ 7-10.

¶ 25 Before the supreme court, the defendant argued that the sentencing scheme at the time of his guilty plea violated the eighth amendment under *Miller* because had he gone to trial, he would have been subject to a mandatory life sentence if convicted. *Id.* ¶ 15. And because the trial court had to use discretion when deciding whether to impose a life sentence, a statutory scheme that precluded a trial court from exercising discretion was unconstitutional as it applied to him. *Id.* While defendant conceded he was not sentenced under the statutory scheme, he maintained "that when he entered into the plea agreement with the State, he did not anticipate that the 50-year prison term stipulated in it would later be declared to be a *de facto* life sentence that required the trial court's use of discretion and consideration of his youthful characteristics and rehabilitative potential." *Id.* ¶ 19.

¶ 26 Our supreme court rejected the defendant's argument and affirmed the appellate court's judgment. *Id.* ¶¶ 1, 19. The *Jones* court noted that all parties understood the applicable law at the time of the plea. Thus, the "crux" of the defendant's claim concerns the inability to predict that the United States Supreme Court would change the criteria for reviewing the constitutionality of the applicable law. *Id.* ¶ 19.

¶ 27 The *Jones* court observed that a voluntarily guilty plea waives "all non-jurisdictional errors or irregulates, *including constitutional ones*." (Internal quotation marks removed and emphasis in the original.) *Id.* ¶ 20. A guilty plea is "a bet on the future," which "permits a defendant to gain a present benefit in return for the risk that he [or she] may have to [forgo] future favorable legal developments. *Id.* ¶ 21 (quoting *Dingle v. Stevenson*, 840 F.3d 171, 171 (4th Cir. 2016).

¶ 28 The supreme court concluded that because the defendant in *Jones* entered into a guilty plea "'to avoid a potential, not certain, sentence,'" his "knowing and voluntary guilty plea waived" constitutional challenges based on later changes in relevant law. *Id.* ¶ 26.

¶ 29    Schultz does not challenge a hypothetical sentence but falls within the exception noted in *Jones* that "if the statutory sentencing scheme had actually been applied in this case to set [Jones's] life sentence, [Jones's] argument would have presented a claim that we could have reviewed on its legal merits." *Id.* ¶ 18.

¶ 30    Simply put, unlike in *Jones*, Schultz sought relief based on a sentencing scheme that applied to him, which does not implicate *Jones*'s "bet-on-the-future" concerns. So, *Jones* does not preclude this court from reviewing the merits of Schultz's claim.

¶ 31                    *Petitioner Did Not Forfeit Proportionate Penalties Claim*

¶ 32    Schultz argues his petition establishes a gist of a constitutional claim for an as-applied challenge that his sentence violates the proportionate penalties clause of the Illinois Constitution. He asserts that section (a)(2)(i) of the truth-in-sentencing statute violates the Illinois proportionate penalties clause because his youth was not considered at sentencing.

¶ 33    The State argues Schultz forfeited this claim by not having raised it in his petition. The State also contends Schultz's petition alleged the truth-in-sentencing statute was unconstitutional under the eighth amendment but fails to assert that the sentence violated the proportionate penalties clause.

¶ 34    To survive dismissal at the first stage, a petition must present the gist of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). A defendant does not need to make legal arguments or cite legal authority in the petition, just present a limited amount of detail. *Id.* This is a low threshold. *Id.* A claim not raised in the petition cannot be argued for the first time on appeal. *Jones*, 213 Ill. 2d 498 at 505. For this reason, we examine the petition to determine whether Schultz's appellate arguments draw on a claim presented to the trial court.

¶ 35    In his petition, Schultz alleged that (i) at the time of the offense, he was 17 years old, and (ii) he pled guilty to first degree murder and was sentenced to serve 25 years at 100%. He argued, "The Truth-In-Sentencing statute which [a]ffects our children is cruel, against the public and family interest, ignores the decency of a civilize[d] society and the opportunity for a young man like the petitioner to rehabilitate, making it unconstitutional and in violation of the Eighth and Fourteenth Amendments of both the Illinois and United States Constitution." He also argued that "[t]he typical safeguards under both the Eighth and Fourteenth Amendments of the United State Constitution must not be ignored when considering the sentences against crimes committed by young men who suffered from traumatic events prior to their convictions."

¶ 36    Schultz's petition asserted that the truth-in-sentencing statute violated both the Illinois Constitution and the United States Constitution, as applied to his sentence. We acknowledge the State's point that Schultz only cited the Eighth and Fourteenth Amendments to the United States Constitution, amendments our constitution does not have. But, when discerning the scope of a claim in a *pro se* post-conviction petition at the first stage, we construe it liberally in the petitioner's favor. *E.g., People v. Coleman*, 183 Ill. 2d 366, 382 (1998). By referencing the Eighth Amendment—through which we protect the rights of juveniles in criminal sentencing under the federal constitution—in the same sentence as the Illinois constitution, we conclude Schultz intended to invoke the similar protections we afford juveniles under the proportionate penalties clause. At this stage, liberally construing the petition as we must, we find that Schultz has not forfeited his proportionate penalties clause claim.

¶ 37                    *Truth-In-Sentencing Statute*

¶ 38    Schultz concedes his 25-year sentence with no possibility of parole is not a life sentence. Instead, Schultz argues the truth-in-sentencing statute (730 ILCS 5/3-6-3(a)(2)(i) (West 2020)), is

unconstitutional as applied to him because it does not allow him to demonstrate rehabilitative potential and obtain release before the expiration of his sentence.

¶ 39    As stated, the United States Supreme Court in *Miller* held that mandatory life sentences without the possibility of parole for juvenile offenders violate the eighth amendment. *Miller*, 567 U.S. at 479. Our supreme court applied *Miller* to *de facto* life sentences (*Reyes*, 2016 IL 119271, ¶ 10) and discretionary life sentences (*Holman*, 2017 IL 120655, ¶ 40). Our supreme court also determined that a sentence exceeding 40 years presents a *de facto* life sentence. *Buffer*, 2019 IL 122327, ¶ 40. More recently, in *People v. Dorsey*, our supreme court held that a juvenile defendant's *opportunity* for release after spending 40 or fewer years is the only relevant consideration, whether or not the trial court considers it. 2021 IL 123010, ¶ 64.

¶ 40    Schultz's 25-year sentence is not unconstitutional under current precedent – he did not receive a mandatory life sentence as prohibited by *Miller*, nor a discretionary *de facto* life sentence defined by *Buffer*. Even if served at 100%, Schultz has the opportunity for release before serving 40 years.

¶ 41    Schultz primarily relies on *People v. Othman*, 2019 IL App (1st) 150823 (*Othman I)*, where we found the challenged statute unconstitutional. But our Supreme Court entered a supervisory order vacating the portions of *Othman I* that addressed the defendant's sentence. *People v. Othman*, 2020 IL App (1st) 150823-B, ¶¶3-5 (*Othman II*). Nevertheless, Schultz argues the reasoning in *Othman I* was correct and should be applied. While we appreciate *Othman I*'s discussion of juvenile sentencing principles, we disagree.

¶ 42    In *Othman I*, the 17-year-old defendant was sentenced to 55 years for first degree murder. *Id.* ¶ 1. On appeal, the court addressed whether the defendant's sentence was unconstitutional under *Miller* and whether the Truth-in-Sentencing Act was unconstitutional as applied to juvenile

offenders. *Id.* ¶ 77. Because "every major case on the issue of juvenile justice strongly condemns sentencing policies that prevent a juvenile from seeking to demonstrate rehabilitation and parole at some point during his prison sentence.," the *Othman I* court found that the Truth-in-Sentencing Act was unconstitutional. *Id.* ¶ 92. While *Othman I* expresses great hopes about rehabilitation and sentencing juveniles, it is not the current law.

¶ 43   As the State points out, the appellate court rejected similar arguments about truth-in-sentencing before and after *Othman I*. See *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 60 and *People v. Banks*, 2015 IL App (1st) 130985, ¶ 22; see also *People v. Johnson*, 2020 IL App (2d) 170646, ¶¶ 7-15 ("[S]ince the decision in *Miller*, courts in this state have repeatedly rejected similar as-applied challenges regarding the constitutionality of section 3-6-3(a)(2)(i) . . .") and *People v. Brakes*, 2021 IL App (1st) 181737, ¶¶ 39-44.

¶ 44   In *Brakes*, we found the reasoning in *Othman I* unpersuasive even if it survived our supreme court's supervisory order. *Brakes*, 2021 IL App (1st) 181737, ¶ 41. We noted the analysis in *Othman I* was *dicta* because the court found the defendant's 55-year sentence substantively unconstitutional under the proportionate penalties clause. *Id.* (citing *Othman I*, 2019 IL App (1st) 150823, ¶¶ 77-86. Thus, the court's further analysis of the constitutionality of the truth-in-sentencing statute was not necessary to its judgment. *Id.* And we noted that we agree with the court in *Pacheco* that the remedy for a juvenile defendant who receives a de facto life sentence is a challenge to the substantive sentence, not the statute requiring the defendant to serve 100%. *Id.*

¶ 45   We have nothing but sympathy for legal framework *Othman I* envisioned. For example, *Othman I* presciently described the legislative failure to account for the unique nature of juvenile offenders when drafting and passing the Truth In Sentencing Act. See *Othman I*, 2019 IL App (1st) 150823, ¶ 108. The court also correctly noted the disjuncture between truth in sentencing and the

United States Supreme Court's pronouncements on eighth amendment protections for juveniles. *Id.* (Quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010) ("By denying [juvenile defendants] the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society."). We think *Othman I*'s vision for juvenile sentencing—prohibiting juveniles from ever being subject to 100% sentences—is a lofty goal. Our General Assembly has largely made good on that goal for juvenile offenders convicted of non-homicide offenses after June 1, 2019, providing them with mandatory parole review after serving 10 or 20 years of their sentence, depending on the offense of conviction. See 730 ILCS 5/5-4.5-115(b) (West 2020).

¶ 46   Regardless of our view of the ideal manner to conduct juvenile sentencing, we must defer to our supreme court. And, as we observed in *Brakes*, *Dorsey* effectively overruled the reasoning in *Othman I. Brakes*, 2021 IL App (1st) 181737, ¶ 42. We reasoned that *Dorsey* shifts the focus from the sentence imposed to the actual time a defendant must serve. *Id.* "In other words, a juvenile defendant's sentence (whether served at 100%, 85%, or 50%) may be subject to a constitutional challenge only if it will keep the juvenile in prison for more than 40 years. *Id.* (citing *Dorsey*, 2021 IL 123010, ¶ 64 (relying on *Buffer*, 2019 IL 122327)). *Dorsey* emphasized *Buffer*'s 40-year line hinged on a sentence lacking an "opportunity to demonstrate rehabilitation and obtain release short of serving more than 40 years in prison." *Dorsey*, 2021 IL 123010, ¶ 64. We cannot read *Dorsey* any other way than to say that a juvenile sentenced before June 1, 2019, who will serve an actual-time portion of his or her sentence under 40 years, may not avail themselves of *Miller*'s constitutional protections. Schultz's 25-year sentence served at 100% does not violate the eighth amendment since it dwells beneath *Buffer's* ceiling.

¶ 47    For clarity, we also find that Schultz's proportionate penalties clause does not warrant further proceedings. At oral argument, the State noted that *Miller* and *Dorsey* aside, the question becomes whether Schultz's sentence violates the proportionate penalties clause on its own.

¶ 48    The proportionate penalties clause provides that "penalties shall be determined both according to the seriousness of the offense and with the objective of resorting the offender to useful citizenship." Ill. Const. 1970, art. 1 § 11. And a violation may be shown if the penalty is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." *People v. Moss*, 206 Ill. 2d 503, 522 (2003). Schultz does not offer an argument aside from *Miller* that his sentence violates the proportionate penalties claim.

¶ 49    Even so, as we explained in *Brakes*, bound by *Dorsey*, the question is not whether a defendant must serve his or her sentence at 100% (or 85% or 50%); instead, we look only to whether the actual time served will amount to a *de facto* life sentence. See *Brakes*, 2021 IL App (1st) 181737, ¶ 44 (noting that if the defendant's sentence violates the proportionate penalties clause, it is because the term of years is substantively unreasonable). Schultz is serving a 25-year sentence, and, as we concluded, concerning his Eighth Amendment claim, his term of years is not a *de facto* life sentence no matter how much of the sentence Schultz serves.

¶ 50    Affirmed.

¶ 51    JUSTICE PUCINSKI, specially concurring:

¶ 52    The majority points out that the General Assembly has provided that juvenile offenders convicted on or after June 1, 2019, are now entitled to mandatory parole review after serving 10 or 20 years of their sentence, depending on the offense of conviction. See 730 ILCS 5/5-4.5-115(b) (West 2020). But that leaves out a specific number of juvenile offenders who were sentenced before June 1, 2019. I understand that the Legislature can create different classes of offenses and

offenders, but to pin that difference on when sentencing occurred is, to me, an unjust and unjustifiable system. If the Legislature believes that juvenile offenders should have the right to demonstrate their rehabilitation – a hallmark of the Illinois system of corrections since its earliest days – then that right should be available to every juvenile defendant. That is not so say that every juvenile defendant will be able to demonstrate rehabilitation; the parole board has complete oversight in that matter and will carefully consider every defendant on a case-by-case basis; but the right to petition for early release based on rehabilitation should not be denied to one group of juvenile offenders just because they were sentenced before the Legislature made the political decision not to make 5-4.5-115(b) retroactive.

¶ 53    JUSTICE HYMAN joins this special concurrence.