2022 IL App (1st) 192182

SIXTH DIVISION
March 25, 2022

No. 1-19-2182

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 11 CR 14650 |
| | ) | |
| PRINCE WATSON, | ) | The Honorable |
| | ) | James B. Linn, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Harris and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner, Prince Watson, appeals from the circuit court of Cook County's first-stage summary dismissal of his *pro se* postconviction petition. On appeal, petitioner argues his petition stated an arguable basis of a meritorious claim that the Truth-in-Sentencing Act is unconstitutional as applied to juvenile offenders such as him, and that his 32-year sentence for first degree murder violates the proportionate penalties clause of the Illinois Constitution.

¶ 2    We find petitioner waived his constitutional claims by pleading guilty in exchange for a 32-year prison sentence for first degree murder and a 4-year prison sentence for each of two counts of robbery. Waiver aside, petitioner's petition did not set forth an arguable claim that the truth-in-sentencing statute is unconstitutional as applied to him because a statutory requirement that a

juvenile offender serve 100% of a nonlife sentence for murder does not violate *Miller v. Alabama*, 567 U.S. 460 (2012) or the eighth amendment. Petitioner forfeited his claim that his 32-year sentence violates the proportionate penalties clause because he did not set up that claim in his postconviction petition, so we do not reach the merits of that claim. We affirm the circuit court's judgment dismissing the postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4     On March 28, 2011, petitioner was riding on the CTA's Brown Line. As the train pulled into the Fullerton station, petitioner forcibly took Amy Rojack's iPhone and fled through the train doors onto the platform and down the crowded stairs. As he ran down the stairs, petitioner pushed Sally Katona-King, causing her to fall and suffer numerous serious injuries from which she later died. Petitioner committed two similar robberies on April 6 and April 17, 2011. Petitioner was 17 years old at the time of the offenses. He was arrested and charged with first degree murder, robbery, and aggravated battery for the offenses committed on March 28, and was charged with two counts of robbery under separate indictments. Petitioner waived his rights to a jury and presentence investigation report. He pleaded guilty to murder and two counts of robbery pursuant to a fully negotiated plea. The circuit court heard testimony from Katona-King's daughter and received victim's impact statements from two of Katona-King's other children. The circuit court heard argument in aggravation that included numerous juvenile robberies and probation violations.

¶ 5     The circuit court also heard argument in mitigation, including petitioner's difficult childhood. Defense counsel argued petitioner's was born with alcohol and drugs in his system. His mother died of an overdose when he was three years old and he was raised by his grandparents in the Cabrini Green housing projects, where he was exposed to criminal behavior, drug use, and abuse. He received treatment for mental health problems, but the treatment was inconsistent and

did not work. Counsel emphasized that petitioner was 17 years old at time of the offenses, and that his crimes "were the essence of being a teenager ***. When you're *** 17, you're stupid and there's just no getting around that." Despite dropping out of school in ninth grade, petitioner was smart and intelligent. Petitioner never used a weapon or "attacked anyone" while stealing iPhones, and his older brother was in prison for armed robbery. Petitioner "was unable to rise up above the tragedies that happened to him: his sister's murder, his mother's drug overdose, the way he was raised." Counsel acknowledged that petitioner "would be sentenced to a long term in prison, and that's a shame," because petitioner "did have promise, and hopefully *** still does have promise and go and do his time *** but then come out and rise above the place that he's brought his life to currently ***." The circuit court also considered a letter sent by defendant to Katona-King's family expressing regret and asking for forgiveness. The circuit court sentenced petitioner to 32 years' imprisonment for murder to be served at 100%, and to 4-years' imprisonment on each robbery count pursuant to the negotiated plea, with all the sentences to run concurrently. Petitioner did not file any postsentencing motions and did not file any appeals.

¶ 6    In July 2019, petitioner filed the *pro se* postconviction petition at issue and made the following allegations. He was 17 years old on March 28, 2011. He was sentenced to 32 years' imprisonment and was required to serve his sentence at 100% with no opportunity to earn credit against the sentence pursuant to the Truth in Sentencing Act (730 ILCS 5/3-6-3(a)(2)(i) (West 2012). Under this court's decision in *People v. Othman*, 2019 IL App (1st) 150823 (*Othman I*), he was entitled to a new sentencing hearing because the truth-in-sentencing statute deprives juvenile offenders of an opportunity to demonstrate rehabilitative potential, in violation of the due process and proportionate penalties clauses in sections 2 and 11 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 11). The circuit court dismissed the postconviction petition at the first

stage, finding the petition lacked merit and was "outside the boundaries" of the supreme court's decision in *People v. Buffer*, 2019 IL 122327. Petitioner filed a timely notice of appeal.

¶ 7                                    II. ANALYSIS

¶ 8     On appeal, petitioner argues his petition stated an arguable basis of a meritorious claim that the Truth-in-Sentencing Act is unconstitutional as applied to juveniles such as him because it bars him from receiving credit against his 32-year sentence for murder, despite his youth and rehabilitative potential, and restrains consideration of the factors identified in *Miller*, 567 U.S. 460 (2012) related to juvenile offenders. He further argues his petition stated the arguable basis of a meritorious claim that his sentence violates the proportionate penalties clause because "[t]here is no reason as to why the *Miller* factors should only apply to juveniles who have committed the most serious crimes." Petitioner also argues "the fact [petitioner] was sentenced pursuant to a negotiated plea does not bar him from raising *** [his] claims in a post-conviction petition."

¶ 9     At the first stage of proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), a petitioner only needs to state the gist of a constitutional violation, and the circuit court may dismiss the petition at the first stage if the petition has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 9, 16 (2009). Summary dismissal is appropriate where the claims in the petition are frivolous or patently without merit. *Id.* at 11-12. We review *de novo* the circuit court's summary dismissal of a postconviction petition. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 10                                   A. Waiver

¶ 11    The State relies on *People v. Sophanavong*, 2020 IL 124337, ¶ 33 to argue that petitioner's voluntary guilty plea waived all non-jurisdictional errors, including constitutional errors, and therefore all the claims in petitioner's petition are waived. Petitioner relies on this court's decision

in *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 19 to argue that a juvenile's negotiated plea does not operate as a waiver of postconviction constitutional claims where those claims—such as *Miller*-based claims directed at juvenile sentencing issues—did not exist at the time of the guilty plea. We reject petitioner's reliance on *Daniels* and find defendant's guilty plea waived his postconviction petition's constitutional challenges.

¶ 12    In *Sophanavong*—which did not involve a juvenile offender—our supreme court considered whether the defendant's guilty plea foreclosed his ability to challenge the circuit court's failure to strictly comply with a statutory provision for foregoing a presentence investigation report. 2020 IL 124337, ¶ 2. The defendant agreed to plead guilty to first degree murder in exchange for a 55-year prison sentence. The parties agreed to waive the PSI report (*id.* ¶ 10), and the circuit court sentenced the defendant to 55 years in prison (*id.* ¶ 11). In a second amended motion prepared by counsel, the defendant moved to withdraw his guilty plea, asserting he was not in a coherent state of mind at the time of the plea and that his counsel was ineffective. *Id.* ¶ 14. On appeal, the defendant argued for the first time that the circuit court did not comply with section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2012)) by failing to order a PSI report or be informed of his prior criminal offense dispositions. *Id.* ¶ 15. A majority of the appellate court reversed and remanded. Our supreme court reversed the appellate court's judgment. The court found "the defendant long forfeited any claim of noncompliance with section 5-3-1 by failing to raise the issue" in any of his motions to withdraw his guilty plea. *Id.* ¶ 25. The court also cited *People v. Townsell*, 209 Ill. 2d 534 (2004) for the proposition that "a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." *Sophanavong*, 2020 IL 124337, ¶ 33.

¶ 13    In *People v. Jones*, 2021 IL 126432, the supreme court considered whether a juvenile offender who pleaded guilty to first degree murder pursuant to a fully negotiated plea could pursue a successive postconviction petition challenging his 50-year prison sentence on eighth amendment grounds under *Miller*. The circuit court denied the defendant's postconviction petition and the appellate court affirmed. Our supreme court likewise affirmed. The court first examined whether the defendant's guilty plea precluded a *Miller*-based claim, noting that the defendant conceded he was not sentenced under a statutory sentencing scheme. The *Jones* court relied on *Sophanavong* and *Townsell* to observe that the defendant's plea agreement foreclosed any non-jurisdictional claims of error. *Id.* ¶ 20. The State had not engaged in any form of misrepresentation or misconduct to induce the defendant to plead guilty, so his knowing and voluntary guilty plea "waived any constitutional challenge based on subsequent changes in the applicable law." *Id.* ¶ 26 (citing *Sophanavong*, 2020 IL 124337, ¶ 33; *Townsell*, 209 Ill. 2d at 545).

¶ 14    Both *Sophanavong* and *Jones* were decided after this court's decision in *Daniels*. In *Daniels*, this court considered whether the defendant's guilty plea operated as a waiver of his right to pursue an as-applied proportionate penalties claim in a successive postconviction petition. The State argued that our supreme court's decision in *People v. Jackson*, 199 Ill. 2d 286 (2002) foreclosed the defendant's postconviction claim because his conviction stemmed from a fully negotiated plea. The *Daniels* court rejected the State's argument, observing that our supreme court's holding in *Jackson* was limited to *Apprendi*-based sentencing objections. *Daniels*, 2020 IL App (1st) 171738, ¶ 17; *Townsell*, 209 Ill. 2d at 548. The *Daniels* court found "[t]he State has simply not convinced us that the outcome in this case, which involves *what* should have been considered at sentencing and what was a permissible sentence, is controlled by the holding in *Jackson*, a case concerned solely with *who* should make factual findings related to sentencing."

(Emphases in original.) *Daniels*, 2020 IL App (1st) 171738, ¶ 17. The *Daniels* court also observed that waiver only occurs when there is a voluntary and knowing relinquishment of a known right, which could not have occurred in *Daniels* because the defendant was sentenced 20 years before our supreme court "recognize[d] the potential viability of youth-based claims made by young-adult offenders ***." *Id.* ¶ 18. The *Daniels* court concluded the defendant's guilty plea was not a knowing waiver of his right to bring an as-applied proportionate penalties claim. *Id.* ¶ 19.

¶ 15    *Sophanavong* and *Jones* undermine this court's finding in *Daniels* that the rule in *Jackson* is limited to *Apprendi*-based sentencing objections. Instead, our supreme court found in *Sophanavong* and *Jones* that guilty pleas operate as a waiver of all non-jurisdictional challenges. Thus, while the *Daniels* court reasoned that a guilty plea only waives challenges to *Apprendi*-based sentencing errors, the supreme court has not taken such a narrow view of waiver.

¶ 16    Furthermore, the *Daniels* court found the juvenile criminal defendant could not have waived his *Miller*-based challenge when he pleaded guilty because there was no voluntary relinquishment of a known right, since the right to *Miller*-compliant sentencing did not yet exist. But in *Jones*, our supreme court rejected the defendant's argument that when he entered his plea agreement, "he did not anticipate that the 50-year prison term stipulated in it would later be declared to be a *de facto* life sentence that required the trial court's use of discretion and consideration of his youthful characteristics and rehabilitative potential." *Jones*, 2021 IL 126432, ¶ 19. The court explained that "plea agreements are contracts, and principles of waiver apply equally to them." *Id.* ¶ 21 (citing *People v. Absher*, 242 Ill. 2d 77, 87 (2011)). "Entering into a contract is generally 'a bet on the future.' " *Id.* (quoting *Dingle v. Stevenson*, 840 F.3d 171, 175 (4th Cir. 2016)). " '[A] classic guilty plea permits a defendant to gain a present benefit in return

for the risk that he may have to [forgo] future favorable legal developments.' " (Alterations in original.) *Id.* (quoting *Dingle*, 840 F.3d at 175).

¶ 17    In *Dingle*, a juvenile defendant pleaded guilty to murder and to a life sentence with the possibility of parole to avoid the death penalty, although he ultimately was not eligible for parole. After the Supreme Court found that the eighth amendment barred capital punishment for juvenile offenders (*Roper v. Simmons*, 543 U.S. 551 (2005)), Dingle sought to withdraw his guilty plea. The district court denied Dingle relief and the Court of Appeals for the Fourth Circuit affirmed. The *Dingle* court found that *Roper* did not retroactively invalidate Dingle's guilty plea. The *Dingle* court observed that while the death penalty factored into the plea discussions, nothing suggested that *Roper* "would stretch beyond the proscribed sentence to reopen guilty pleas with a different sentence." *Dingle*, 840 F.3d at 174. The *Dingle* court emphasized that plea agreements involve a choice to accept the risks and rewards of the deal (*id.*), and that the Supreme Court observed in *Brady v. United States*, 397 U.S. 742, 757 (1970) that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

¶ 18    Relying on *Dingle* and *Brady*, the *Jones* court found "the petitioner's knowing and voluntary guilty plea waived any constitutional challenge based on subsequent changes in the applicable law." *Jones*, 2021 IL 126432, ¶ 26. The same is true here. Petitioner was facing first degree murder, aggravated battery, and three robbery charges. He agreed to plead guilty to murder in exchange for a 32-year prison sentence and to two robbery charges in exchange for four-year sentences on each charge. Petitioner's postconviction petition contains no facts challenging the propriety of his guilty plea, and at no time did he seek to withdraw his guilty plea. By accepting a

plea agreement and pleading guilty, petitioner waived the postconviction claims raised in his petition.

¶ 19        B. Petitioner's Constitutional Challenge to the Truth-In-Sentencing Statute

¶ 20    Waiver aside, petitioner argues his petition stated the arguable basis of a meritorious claim because this court in *Othman I*, 2019 IL App (1st) 150823 found the truth-in-sentencing statute was unconstitutional as applied to juvenile offenders like him. Petitioner acknowledges that the portion of this court's decision in *Othman I* was vacated pursuant to a supervisory order from our supreme court and is therefore nonprecedential but insists the reasoning in *Othman I* is sound. He contends the truth-in-sentencing statute mandates service of a murder sentence at 100%, which when applied to juvenile offenders, "defies the central principle *** in *Miller* *** : that mandatory sentencing schemes designed for adult offenders preclude consideration of youth and its hallmark features." He asserts the truth-in-sentencing statute "restricts consideration of the *Miller* factors" and "is an implicit admission that juveniles are incapable of change, in direct contradiction to the teachings of *Miller* and its progeny." We disagree.

¶ 21    In *Miller*, the Supreme Court expanded on a line of cases narrowing the circumstances under which a juvenile offender might be subject to society's harshest criminal punishments. The Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." *Miller*, 567 U.S. 460, 479 (2012). Before imposing life in prison on a juvenile offender, the sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. *Miller* announced a substantive rule of constitutional law, and thus applies retroactively. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016). *Miller*, however, did not foreclose a sentencing court from imposing a discretionary life sentence, but instead

requires consideration of the offender's youth and its attendant characteristics before imposing a life sentence. *Dorsey*, 2021 IL 123010, ¶ 39; *People v. Lusby*, 2020 IL 124046, ¶ 33. Under our supreme court's precedent, *Miller*'s requirements apply to mandatory and discretionary life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40), and to *de facto* life sentences that require a juvenile offender to serve more than 40 years in prison (*People v. Buffer*, 2019 IL 122327, ¶ 39).

¶ 22　We note petitioner's 32-year sentence, even if served at 100%, is not a life sentence under any constitutional measure: he was not mandatorily sentenced to life in prison as prohibited by *Miller*, nor was he sentenced to a discretionary *de facto* life sentence as defined by *Buffer*. Petitioner argues, however, that the truth-in-sentencing statute as applied to juvenile offenders prevents him from obtaining an early release based on rehabilitation, in violation of the principles in *Miller*. To state an as-applied constitutional challenge, petitioner must show the statute violates the constitution as it applies to him. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). We find petitioner's as-applied challenge fails.

¶ 23　This court has rejected similar challenges to the truth-in-sentencing statute as applied to juvenile offenders. *People v. Pacheco*, 2013 IL App (4th) 110409, ¶¶ 58-60 (rejecting as-applied to challenge because the Supreme Court has never held that "the eighth amendment prohibits a juvenile defendant from being subject to the same mandatory minimum sentence as an adult, unless the mandatory minimum sentence was death or life in prison without the possibility of parole."); *People v. Banks*, 2015 IL App (1st) 130985, ¶ 22 (relying on *Pacheco* to reject a juvenile offender's as-applied challenge); *People v. Brakes*, 2021 IL App (1st) 181737, ¶¶ 4, 39-42 (rejecting as-applied challenge where, with eligibility for sentencing credit, the defendant could serve 39 years in prison). And as we observed in *Brakes*, "a juvenile defendant's sentence (whether served at 100%, 85%, or 50%) may be subject to a constitutional challenge only if it will keep the juvenile

in prison for more than 40 years." 2021 IL App (1st) 181737, ¶ 42 (citing *People v. Dorsey*, 2021 IL 123010, ¶ 64). We find that petitioner's as-applied challenge to the truth-in-sentencing statute must fail because requiring a juvenile to serve 100% of a term-of-years, non-*de facto* life sentence for murder does not violate the principles set forth in *Miller*.

¶ 24    Petitioner relies primarily on the reasoning set forth in a now-vacated portion of this court's decision in *Othman I*, 2019 IL App (1st) 150823, which heavily relied on a special concurrence to this court's decision in *People v. Buffer*, 2017 IL App (1st) 142931. In *Othman I*, a jury found the defendant guilty of murder and he was sentenced to 55 years' imprisonment. 2019 IL App (1st) 150823, ¶ 1. The defendant was 17 years old at the time of the offense. *Id.* On appeal, a divided panel of this court reversed the conviction due to several trial errors and remanded for a new trial. *Id.* ¶¶ 34-75. The *Othman I* majority went on to address several constitutional arguments directed at the defendant's sentence and found the 55-year sentence was an unconstitutional *de facto* life sentence (*id.* ¶¶ 79-81), the sentence violated the proportionate penalties clause of the Illinois constitution (*id.* ¶¶ 83-86), and the truth-in-sentencing statute was unconstitutional as applied to juvenile offenders (*id.* ¶¶ 91-109). On the truth-in-sentencing issue, the majority found "every major case on the issue of juvenile sentencing strongly condemns sentencing policies that prevent a juvenile from seeking to demonstrate rehabilitation and parole at some point during his prison sentence." *Id.* ¶ 92. The majority acknowledged that no court had found the truth-in-sentencing statute to be unconstitutional but opined that because the truth-in sentencing statute did not distinguish between juvenile and adult offenders and required serving 100% of a sentence for murder, the statute did not permit a juvenile offender to demonstrate rehabilitation, thus " 'deny[ing] them the fundamental right to demonstrate rehabilitation.' " *Id.* ¶ 107 (quoting *People v. Buffer*, 2017 IL App (1st) 142931, ¶ 80 (Pucinski, J., specially concurring)).

¶ 25    The supreme court allowed the State's petition for leave to appeal. *Othman I*, 2019 IL App (1st) 150823, *appeal allowed*, No. 124971 (Nov. 26, 2019). During briefing, the court granted a joint motion for supervisory order filed by the State and the defendant and ordered the appellate court to vacate the portions of its opinion addressing the sentencing issues and to remand to the circuit court for a new trial. *People v. Othman*, 2020 IL App (1st) 150823-B, ¶¶ 3-5 (*Othman II*).

¶ 26    Several panels of this court have noted that the now-vacated discussion of the Truth-in-Sentencing Act in *Othman I* is nonprecedential. *People v. Richblood*, 2021 IL App (1st) 201247-U, ¶ 19 (unpublished order pursuant to Supreme Court Rule 23); *People v. Williams*, 2021 IL App (1st) 200213-U, ¶ 32 (unpublished order pursuant to Supreme Court Rule 23); *People v. Harris*, 2021 IL App (4th) 200095-U, ¶ 45 (unpublished order pursuant to Supreme Court Rule 23). In *Brakes*, this court observed that, even if the *Othman I* court's reasoning on the truth-in-sentencing statute issue survived our supreme court's supervisory order—which it did not—*Othman I*'s analysis of the truth-in-sentencing statute was *dicta* because that court found the defendant's 55-year sentence to be substantively unconstitutional under the proportionate penalties clause. 2021 IL App (1st) 181737, ¶ 41. In other words, the truth-in-sentencing analysis in *Othman I* is, at best, nonprecedential *dicta*, which is not binding on any court. The *Brakes* court also observed the *Othman I* court's conclusion that the truth-in-sentencing statute was unconstitutional was further flawed by the fact that a juvenile challenging a *de facto* life sentence must challenge the substantive sentence rather than the truth-in-sentencing statute requiring serving of the sentence at 100% (*id.* ¶ 41 (citing *Pacheco*, 2013 IL App (4th) 110409, ¶ 58)), and that our supreme court's decision in *Dorsey*, 2021 IL 123010 stands for the proposition that a juvenile's sentence is only subject to constitutional challenges if the juvenile is required to actually serve more than 40 years in prison (*Brakes*, 2021 IL App (1st) 181737, ¶ 42 (citing *Dorsey*, 2021 IL 123010, ¶ 64)).

¶ 27    In *Dorsey*, our supreme court considered whether a juvenile offender's eligibility for day-for-day good conduct credit against an aggregated 76-year prison sentence was relevant in determining whether the sentence was a *de facto* life sentence. The petitioner, who was 14 years old at the time of the murder and attempted murder offenses, was sentenced in 1998 to 40 years in prison for murder, and to 18 years in prison on each of two attempted murder convictions, resulting in a 76-year aggregate sentence without the possibility of parole. The petitioner's motion for leave to file a successive postconviction petition argued his 76-year sentence triggered *Miller*'s protections. The circuit court denied leave to file the successive postconviction petition and the appellate court affirmed. Our supreme court likewise affirmed. After reviewing *Miller* and its progeny, the court explained that, under the sentencing scheme applicable to the petitioner, he was eligible for day-for-day good conduct credit against his sentence. The court observed that the petitioner "has an opportunity to demonstrate maturity and rehabilitation so that he only needs to serve 38 years of his aggregate 76-year sentence." *Dorsey*, 2021 IL 123010, ¶ 53. He was therefore not sentenced a *de facto* life sentence. *Id.* The court further observed "that it is in a defendant's power to shorten his sentence by earning good-conduct credit and that earning such credit allows a defendant the opportunity to exhibit maturity and rehabilitation." *Dorsey*, 2021 IL 123010, ¶ 53. The court found: "a judicially imposed sentence that is more than 40 years but offers day-for-day, good-conduct sentencing credit does not cross the *Buffer* line if it offers the opportunity to demonstrate maturity and obtain release with 40 years or less of incarceration." *Id.* ¶ 64. *Dorsey* makes plain, as we observed in *Brakes*, that *Miller*-based claims cannot survive when the substantive sentence is not a *de facto* life sentence.

¶ 28    In sum, we find petitioner did not state a viable as-applied challenge to the truth-in-sentencing statute. He received a term of years that does not amount to a *de facto* life sentence.

Further, the requirement that he serve 100% of a murder sentence does not offend the principles set forth in *Miller* where he will serve 32 years in prison.

¶ 29                                C. Petitioner's Proportionate Penalties Claim

¶ 30     Petitioner next argues his petition stated an arguable basis for a meritorious claim that his 32-year prison sentence violates the proportionate penalties clause of the Illinois Constitution. He asserts that *Miller* has only been applied in Illinois "where juveniles have been convicted of intentional murder," whereas he was convicted of a crime "where death result[ed] from reckless actions but there was no intentional act of violence." He contends that applying the same sentencing scheme to "juveniles who committed intentional murder and a juvenile who committed an unintentional act that resulted in death" violates the proportionate penalties clause.

¶ 31     The State argues petitioner forfeited this claim by failing to raise it in his petition. The State contends petitioner's petition alleged the truth-in-sentencing statute was unconstitutional, but he did not assert anywhere in his petition that his substantive sentence violated the proportionate penalties clause. Defendant responds that his petition did raise a proportionate penalties claim because he argued that the truth-in-sentencing statute as applied to him violated article I, section 11 of the Illinois Constitution.

¶ 32     The first stage of postconviction proceedings presents a 'low threshold,' requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *People v. Johnson*, 2021 IL 125738, ¶ 25 (citing *People v. Brown*, 236 Ill. 2d 175, 184 (2010)). But "a claim not raised in a petition cannot be argued for the first time on appeal." *People v. Jones*, 213 Ill. 2d 498, 505 (2004) (citing *People v. McNeal*, 194 Ill. 2d 135, 147 (2000); *People v. Davis*, 156 Ill. 2d 149, 158 (1993)). We must therefore examine the petition to determine whether petitioner's appellate arguments are based on a claim that was presented to the circuit court.

¶ 33    In his *pro se* petition, petitioner made the following allegations. He was 17 years old at the time of the offense. He pleaded guilty "and was sentenced under Illinois Truth in Sentenc[ing] law *** to serve 32 years at 100%." His petition was not filed within any of the time frames prescribed by the Post-Conviction Hearing Act, but the delay in filing was not due to his culpable negligence and relied on newly decided caselaw. He argued he was entitled to a new sentencing hearing and for his new sentence to be served at 50% because the truth-in-sentencing statute deprived him of the ability to demonstrate rehabilitation. He argued that under *Othman I* and *People v. Miller*, 202 Ill. 2d 328, 339 (2002), he had "demonstrated a claim that his sentence under Illinois'[s] Truth in Sentencing Act violates Illinois Constitution Art. 1, sections 2 and 11."

¶ 34    It is clear that petitioner's petition asserted a claim directed at the application of the truth-in-sentencing statute to his sentence, and not at the substance or imposition of the 32-year sentence itself. We therefore agree with the State that petitioner forfeited any claim under the proportionate penalties clause by failing to set up that claim in his petition.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37    Affirmed.

**No. 1-19-2182**

| | |
|---|---|
| **Cite as:** | *People v. Watson*, 2022 IL App (1st) 192182 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-14650; the Hon. James B. Linn, Judge, presiding. |
| **Attorney For Appellant:** | James E. Chadd, Douglas R. Hoff, and Chan Woo Yoon, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys For Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowack, Enrique Abraham, and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |