2024 IL App (1st) 210583-UB

No. 1-21-0583

Order Filed June 7, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 09 CR 11653 |
| | ) | |
| IAN VALENCIA | ) | Honorable James M. Obbish, |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Ocasio concurred in the judgment.

**ORDER**

*Held:* Trial court properly granted the State's motion to dismiss petitioner's second-stage postconviction petition where petitioner failed to make a substantial showing that: (1) he was actually innocent of attempted first degree murder; (2) he was deprived of effective assistance of counsel; and (3) his sentence was unconstitutional as applied to him.

¶ 1 Petitioner, Ian Valencia, appeals from the trial court's grant of the State's motion to dismiss his second-stage postconviction petition. On appeal, Valencia contends that he made a substantial showing that: (1) he was actually innocent of attempted first degree murder where he presented newly discovered evidence; (2) he was deprived of effective assistance of trial counsel

where counsel advised him not to testify; and (3) the mandatory sentencing scheme that led to his 26-year sentence is unconstitutional as applied to him. For the following reasons, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3      Following a bench trial, Valencia was found guilty of two counts of attempted first degree murder and one count of aggravated discharge of a firearm stemming from an incident that occurred on June 11, 2009. The details of the trial were discussed on direct appeal in *People v. Valencia*, 2012 IL App (1st) 102312-U, but we will summarize them here as necessary to this appeal.

¶ 4      Nelson Villagomez testified that on the date in question, at approximately 4:45 p.m., he and his brother, Freddie Villagomez, began walking home from the bus stop located near their apartment at 4130 North Kimball. *Id*. ¶ 3. As they walked northbound on Kimball, Nelson noticed a gray Oldsmobile with a man, later identified as Walter Quevedo, in the driver's seat. *Id*. The car pulled up alongside Nelson and Freddie. *Id*.

¶ 5      According to Nelson, Valencia, who was in the passenger seat, "started gang banging" to Nelson and Freddie, and "threw up a gang sign." *Id*. ¶ 4. In response, Nelson told him that he was not "gang banging." *Id*. The encounter lasted approximately 20 seconds. *Id*. Nelson and Freddie were not carrying any weapons and did not make any motions towards the car. *Id*. Nelson had no connection to a gang. *Id*.

¶ 6      Freddie walked ahead of Nelson as they crossed the street. *Id*. ¶ 5. He was a couple steps from their front door when Nelson observed the Oldsmobile parked in an alley, about half a block from his home. *Id*. With both arms raised and his palms up, Nelson said to Valencia, "What you want to do?" *Id*. Nelson then observed Valencia's hand come out of the passenger

window, saw flames from a gun, and heard approximately six gunshots. *Id.* Valencia was shooting in Nelson's direction. *Id.*

¶ 7 When the shooting stopped, Nelson got up from the ground, checked to make sure his brother was safe, and then called the police to report the shooting. *Id.* ¶ 6. The police arrived within a few minutes and took Nelson and Freddie to the police station, where Valencia and Quevedo were in police custody. *Id.* Nelson and Freddie positively identified Valencia as the passenger and the shooter, and Quevedo as the driver. *Id.*

¶ 8 Freddie Villagomez's testimony was substantially the same as that of Nelson's. *Id.* ¶¶ 7-8. Officer John Becker testified that a search of the Oldsmobile revealed a semiautomatic .380-caliber Kel-Tec handgun and two .380-caliber bullets in a hidden compartment under the glove compartment on the passenger side. *Id.* ¶ 9.

¶ 9 Officer Becker testified that he spoke with Valencia on the night of the shooting, and that Valencia said Quevedo told him there was a gun underneath the dashboard on the passenger side, so Valencia retrieved the gun and shot at Nelson and Freddie until the gun was empty. *Id.*

¶ 10 Amy Campbell, an evidence technician, testified that she found five expended shell casings at the mouth of the alley. *Id.* ¶ 10. She also recovered a fired bullet lodged in the front siding, beneath the second-floor window of the home next door to Nelson and Freddie's apartment building. *Id.* She recovered a fired bullet from the flowerbed located in front of the brothers' apartment building. *Id.*

¶ 11 At the conclusion of Valencia's bench trial, he was found guilty of attempted murder. During his sentencing hearing, evidence of his criminal history was presented as follows:

"As to [Valencia's] criminal history as findings of juvenile delinquency in 2007, his reckless conduct, possession of a cannabis, fines and delinquency. In 2008,

Judge, [Valencia] has a finding of delinquency for aggravated discharge of a firearm. That's an offense for which he was sent to the Juvenile Department of Corrections.

In that offense he fires at an occupied vehicle ***."

¶ 12    In mitigation, Valencia's mother testified that Valencia had "severe bipolar" disorder. He was in therapy talking about his brothers going in and out of jail, his father not being involved in his life, and his mother spending a lot of time at work. Valencia's mother testified that Valencia was 8 years old when he was diagnosed with bipolar disorder, and that he cooperated with treatment last when he was "15 or 16" years old. He was in custody for aggravated discharge of a firearm for two months, and then it was several months later that he was arrested for the current crime.

¶ 13    Defense counsel requested the minimum sentence of 26 years' imprisonment.

¶ 14    The trial court sentenced Valencia to the minimum of 6 years' imprisonment for attempted murder, enhanced by a mandatory 20-year term for personally discharging a firearm during the commission of the offense.

¶ 15    On direct appeal, Valencia argued that the State failed to prove him guilty of attempted murder beyond a reasonable doubt. This court disagreed and affirmed the trial court's judgment. *People v. Valencia*, 2012 IL App (1st) 102312-U.

¶ 16    On July 12, 2013, Valencia filed a *pro se* postconviction petition raising the following arguments: (1) he was actually innocent of attempted first degree murder; (2) trial counsel was ineffective for telling Valencia that his juvenile adjudications were admissible against him, which caused him to give up his right to testify at trial; (3) trial counsel was ineffective for failing to interview a witness; (4) trial counsel was ineffective for telling him to reject the State's

plea offer of nine years' imprisonment in exchange for a guilty plea to one count of Class 1 aggravated discharge of a firearm; and (5) the 20-year mandatory firearm enhancement violated the United States and Illinois constitutions as applied to 17-year-olds.

¶ 17    Valencia supported his petition with numerous affidavits. In support of his actual innocence claim, he attached the affidavit of James Galambos, whom Valencia met while they were both incarcerated at Stateville Correctional Center. Galambos stated in his affidavit that he witnessed the shooting and that he "saw the gun pointed upward at an angle, not towards the man that was yelling."

¶ 18    The trial court summarily dismissed Valencia's *pro se* postconviction petition. Valencia appealed.

¶ 19    On appeal, Valencia contended that his postconviction petition was improperly dismissed because it raised arguable claims of: (1) actual innocence; (2) ineffective assistance of counsel; and (3) unconstitutional sentencing. *People v. Valencia*, 2016 IL App (1st) 133524-U. We found that the trial court was misplaced in relying on two cases, *People v. Brown*, 54 Ill. 2d 21, 24 (1973) and *People v. Thompkins*, 161 Ill. 2d 148, 177-78 (1994), in dismissing Valencia's petition because both cases discussed the dismissal of second-stage petitions, not first-stage petitions. *Valencia*, 2016 IL App (1st) 133524-U, ¶ 28. We noted that Valencia's petition was merely at the first stage of postconviction proceedings, "where the threshold for survival is low." *Id*.

¶ 20    Based on our determination that the trial court applied an incorrect standard when reviewing Valencia's petition, we then looked at the petition with the correct standard and found that there was nothing in the record to affirmatively rebut Valencia's claim that his attorney told him that if he testified, the shooting he took part in as a juvenile would be used against him by

the State. *Id*. ¶ 31. Accordingly, we found that it was arguable that counsel's advice misled Valencia into thinking that, no matter what, his juvenile adjudication would be used against him if he testified. *Id*. ¶¶ 29-30. Accordingly, because we found that Valencia's petition adequately set forth allegations that showed his counsel's performance arguably fell below an objective standard of reasonableness and that he was arguably prejudiced, we reversed and remanded with directions to advance Valencia's petition to the second stage. *Id*. ¶ 31. In doing so, we stated:

> "We do not, by our ruling, suggest that defendant's argument will ultimately prevail. Rather, we are following long established legal precedent regarding the procedural process which must be applied to a postconviction petition. In the instant case, the record suggests the trial judge either conflated the first and second stages, or he went directly to the second stage when ruling on defendant's petition. We voice no opinion on the ultimate ruling which will result from allowing defendant's petition to advance in the proper procedural sequence." *Id*. ¶ 33.

¶ 21    On remand, appointed counsel filed a supplemental postconviction petition. The petition added the following claims: (1) Valencia's 26-year sentence is unconstitutional due to his age in light of *Miller v. Alabama*, 567 U.S. 460 (2012); (2) the non-retroactive application of section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)) denies equal protections to juvenile defendants sentenced before the statute's effective date; and (3) that the exclusive jurisdiction provision of the juvenile courts is unconstitutional. Counsel filed a motion to withdraw Valencia's claims that his trial counsel was ineffective for failing to call Quevedo as a witness and for advice regarding plea negotiations.

¶ 22    On August 4, 2020, the State filed a motion to dismiss. A hearing was held, after which a written order was issued by the trial court. The trial court stated that the court had admonished Valencia of his right to testify, that the decision to testify was his alone to make, and that Valencia never alerted the court of his desire to testify. The trial court noted that even taking Valencia's allegations as true, his alleged off-the-record conversation with counsel occurred before the court's admonishments. Therefore, Valencia's allegations of prejudice were affirmatively rebutted by the trial court record.

¶ 23    The trial court rejected Valencia's claim of actual innocence based on the affidavit of Galambos, a fellow inmate of Valencia's. The court noted that Valencia and Galambos had "allegedly never met before they were imprisoned together." The trial court found that Valencia failed to carry his burden where bullets fired from his gun landed in the flowerbed of the victim's house and in a nearby wall. Absent ballistics evidence of his own, the court found that Valencia failed to make a substantial showing of a constitutional violation.

¶ 24    In considering Valencia's sentence under the eighth amendment, the court noted that the 26-year sentence was not a *de facto* life sentence, and therefore did not violate the rule set forth in *Miller*, 567 U.S. 460. The trial court then addressed Valencia's argument that the mandatory 20-year firearm enhancement violated the proportionate penalties clause as applied to him because it deprived the court of its ability to consider his age, background, and the characteristics of youth when crafting an appropriate sentence. The court distinguished Valencia's case from the three cases he relied on in which Illinois courts found that mandatory firearm enhancements violated the proportionate penalties clause. See *People v. Aikens*, 2016 IL App (1st) 133578; *People v. Barnes*, 2018 IL App (5th) 140378; and *People v. Womack*, 2020 IL App (3d) 170208. The court noted that in *Aikens*, the defendant fired a gun at an occupied police vehicle, "but

presented a significant amount of mitigation evidence at sentencing." In *Barnes*, the defendant robbed a gas station and threatened the clerk with a gun, but the gun was unloaded. And in *Womack*, the defendant shot the victim during a heated argument where the victim threatened to shoot the defendant and his family. The trial court noted that in all three cases, the defendants had no criminal history.

¶ 25 The trial court stated that here, Valencia shot at two brothers, completely unprovoked, in front of their own homes. The court further noted that Valencia had a prior criminal history which included a juvenile adjudication for shooting a gun at an occupied vehicle. The court ultimately found that Valencia failed to make a substantial showing that his 20-year firearm enhancement violated the proportionate penalties clause as applied to him. Valencia appealed.

¶ 26 In a decision entered on February 24, 2023, we affirmed the judgment of the circuit court. *People v. Valencia*, 2023 IL App (1st) 210583-U. Valencia subsequently filed a petition for leave to appeal in the Illinois Supreme Court. On January 24, 2024, the Illinois Supreme Court denied the petition for leave to appeal, but entered a supervisory order directing us to vacate our February 24, 2023, judgement, and instructing us to:

> "consider the effect of this Court's opinion in *People v. Hilliard*, 2023 IL 128186, ¶ 29 on the issue of whether defendant may challenge his sentence under the proportionate penalties clause where the sentence is not a *de facto* life sentence and determine if a different result is warranted."

¶ 27 We subsequently permitted the parties to file supplemental briefing on the issue of whether Valencia may challenge his sentence under the proportionate penalties clause and have considered those arguments in our analysis below.

¶ 28                                 II. ANALYSIS

¶ 29    On appeal, Valencia contends that that he made a substantial showing in his second-stage postconviction petition that: (1) he is actually innocent of attempted first degree murder; (2) he was denied effective assistance of counsel which resulted in the denial of his right to testify; and (3) his sentence is unconstitutional. The State responds that Valencia's supporting evidence is insufficient to demonstrate a substantial showing of actual innocence, the record rebuts his contention that he was denied effective assistance of counsel or the right to testify, and Valencia failed to make a substantial showing that his 26-year sentence is unconstitutional as applied to him.

¶ 30    Under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)), individuals convicted of criminal offenses may challenge their convictions on grounds of constitutional violations. The Act sets forth three stages of review. To survive dismissal at the initial stage of a postconviction proceeding, a petition need only present the gist of a meritorious constitutional claim, requiring only that the petitioner plead sufficient facts to assert an "arguably constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 31    At the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The petitioner bears the burden of making this substantial showing. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or show a constitutional violation. *Id*. The "substantial showing" of a constitutional violation "is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing,

would entitle petitioner to relief." (Emphasis in original). *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 32                                        A. Actual Innocence

¶ 33    Valencia first contends that he made a substantial showing of actual innocence in his second-stage postconviction petition. To establish a claim of actual innocence, a petitioner must present evidence that is: (1) newly discovered, meaning the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence; (2) material and not cumulative, meaning the evidence is relevant and probative of the petitioner's actual innocence and adds to the information the trier of fact heard at trial; and (3) be of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 34    In support of Valencia's claim that he made a substantial showing in his second-stage postconviction petition of his actual innocence, he attached the affidavit of Galambos, whom he met at Stateville while serving his sentence in this case. Galambos stated in his affidavit that he witnessed the shooting and was standing right by the car when he saw the shooter point the gun "upward at an angle, not toward the man yelling." Galambos averred that he left the scene immediately after the shooting because he did not want to be in the area if anything else happened. After Valencia told him about the offense, Galambos realized that he had witnessed the shooting and shared what he had seen. Valencia contends that this newly discovered evidence was not positively rebutted by the record and negates the finding that he acted with the requisite intent to kill.

¶ 35    The State concedes that Galambos' affidavit is considered newly discovered evidence, as it could not have been discovered prior to Galambos and Valencia meeting at Stateville. It also

concedes that the evidence is material and noncumulative because it is relevant to Valencia's actual innocence. However, it maintains that the result of the trial would not have changed if this evidence had been presented since the other trial evidence refuted the testimony in the affidavit. We agree.

¶ 36    The evidence presented at trial showed that on June 11, 2009, Valencia initiated an argument with two brothers. When one of the brothers yelled, "What you going to do?" Valencia pointed a firearm at him and fired five or six shots. According to one of the brothers, Valencia shot directly at him. Upon being arrested, Valencia admitted to police that he had shot "at the two victims until the gun was empty."

¶ 37    At the time of the shooting, one of the brothers was standing in front of his house with his back to his neighbor's house. Fired bullets were found in the flowerbed in front of the brothers' home and embedded into the siding of the neighbor's house. This physical evidence corroborated the brothers' testimony that Valencia fired *at* the brothers.

¶ 38    To accept Galambos' affidavit as true, we would have to ignore the physical evidence presented at trial, and infer, as the trial court noted, that a "bullet naturally fell from the sky so close to the victims," and another bullet "fired upward embedded itself in a wall behind the victim." Accordingly, because Galambos' affidavit is positively rebutted by the record and is not of such conclusive character that it would probably change the result on retrial, we find that Valencia failed to make a substantial showing of actual innocence in his second-stage postconviction petition. *Robinson*, 2020 IL 123849, ¶ 47; *People v. Sanders*, 2016 IL 118123, ¶¶ 48 ("Well-pleaded factual allegations of a postconviction petition and its supporting evidence must be taken as true unless they are positively rebutted by the record of the original trial proceedings.")

¶ 39                                    B. Ineffective Assistance of Counsel

¶ 40     Valencia's next argument on appeal is that he made a substantial showing in his second-stage postconviction petition that he received ineffective assistance of counsel where trial counsel advised him not to testify because of his juvenile adjudication. The State responds that the court advised Valencia of his right to testify and ensured that his waiver of that right was knowing and voluntary, and therefore there was no ineffective assistance of counsel.

¶ 41     Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

¶ 42     Initially, we note that counsel's performance was not objectively unreasonable under prevailing professional norms. At the time of Valencia's trial, a criminal defendant's juvenile adjudications could be used against a testifying defendant under certain circumstances. See *People v. Villa*, 2011 IL 110777, ¶ 53 (juvenile adjudications may be admitted against testifying defendant if defendant "opens the door" by attempting to mislead the trier of fact about his criminal background).

¶ 43    Moreover, even if we were to find that Valencia made a substantial showing that his counsel's performance was deficient, we would nevertheless find that Valencia was not prejudiced because we cannot say that but for counsel's erroneous advice, the outcome of the trial would have been different.

¶ 44    Every criminal defendant has the fundamental constitutional right to decide whether to testify at trial. *People v. Knapp*, 2020 IL 124992, ¶ 46. Although an attorney may advise his or her client on the potential consequences of testifying, the ultimate decision whether to exercise that right belongs only to the defendant, and only the defendant may waive the right to testify. *Id*. Generally, an attorney's performance will not be found ineffective simply because counsel advised the defendant not to testify; rather, counsel will only be found to be ineffective where the "evidence suggested that counsel refused to allow the defendant to testify." *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009).

¶ 45    In *Knapp*, which was issued by our supreme court while this case was pending in the trial court after being remanded to second-stage proceedings, the defendant claimed in a postconviction petition that he unknowingly and involuntarily waived his right to testify due to trial counsel's erroneous advice. *Knapp*, 2020 IL 124992, ¶ 33. The defendant alleged that his counsel told him that his testimony was not supported by independent evidence and that the defendant's denial of gang affiliation would open the door for the State's gang expert to testify. *Id*. The defendant averred in his affidavit that he would not have waived his right to testify at trial if he had known that his right to testify was not contingent on extrinsic evidence. *Id*. ¶ 34.

¶ 46    After the circuit court admonished the defendant of his right to testify, the defendant advised the court that he understood the decision to testify was his and his alone. *Id*. ¶ 26. The circuit court ultimately dismissed the petition at the first stage, the appellate court affirmed, and

the supreme court affirmed the appellate court's judgment. *Id.* ¶¶ 2, 35. The supreme court explained that, because the circuit court informed the defendant that he had a right to testify, and the defendant affirmed that he did not want to testify at trial after counsel's allegedly deficient conduct, the record positively rebutted the defendant's ineffective assistance claim. *Id.* ¶¶ 51-54, 58.

¶ 47    In doing so, our supreme court stated, "[t]o preserve the right to testify, a criminal defendant is required to make a 'contemporaneous assertion' of that right." *Id.* ¶ 46. The court stated that nothing in the record suggested that the defendant "ever alerted the court of his desire to testify, that he had any questions about his right to testify, or that he otherwise was unsure about waiving his right to testify." *Id.* ¶ 51. The court further explained, "[the defendant's] response during the trial court's admonishments unequivocally rebuts his allegations that his decision not to testify was involuntary or based on allegedly erroneous advice from counsel." *Id.* ¶ 54. The court further stated that taking the defendant's allegations as true, "the alleged off-the-record conversations with counsel on [his] right to testify occurred before the circuit court's admonishments," and therefore the defendant failed to make even an arguable showing of prejudice. *Id.* We find that the same reasoning applies here.

¶ 48    In the case at bar, Valencia claims that he did not make a knowing and voluntary waiver of his right to testify as his counsel advised against it because his juvenile adjudication would be used against him. We note, however, that Valencia was admonished in open court about his right to testify or not testify, and he was the only person that could make that decision. The court told Valencia that the decision about whether a defendant testifies in his or her own defense is "just like the decision whether or not you wish to take a jury trial or waive that jury trial. It is a

14

personal decision to you alone." The court then asked if it was Valencia's decision not to testify in this case, to which he responded, "Yes."

¶ 49    Valencia never advised the court that he wished to testify during this exchange, and in fact, explicitly waived that right. Thus, as in *Knapp*, Valencia's responses in open court rebut his claim that he involuntarily waived his right to testify, and therefore Valencia was not prejudiced. Accordingly, we find that Valencia failed to make a substantial showing in his second-stage petition that he was denied the right to testify based on trial counsel's alleged ineffective assistance of counsel.

¶ 50                                    C. Sentence

¶ 51    Valencia's final contention on appeal is that he made a substantial showing in his second-stage postconviction petition that his 26-year sentence, as applied to him, resulted in a sentence that violated the proportionate penalties clause. The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Cons. 1970, art. I, §11. A sentence violates the proportionate penalties clause if it is "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*). Our supreme court has not defined what constitutes a cruel or degrading sentence that is "wholly disproportioned to the offense" because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id*. at 339. "To determine whether a penalty shocks the moral sense of the community, we must consider objective evidence as well as the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 52    It is well established that courts unequivocally distinguish juvenile offenders from adults when imposing life sentences. See *Miller*, 567 U.S. 460; *Leon Miller*, 202 Ill. 2d 328. We know that "children lack maturity and have an underdeveloped sense of responsibility, are more vulnerable to negative influences, and have character that is not yet well formed." *People v. Woods*, 2020 IL App (1st) 163031, ¶ 56 (citing *Miller*, 567 U.S. at 471). In *Miller*, the Supreme Court held that "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" violates the Eighth Amendment of the United States Constitution because such a scheme, by making the factors of youth "irrelevant to an imposition of that harshest prison sentence, *** poses too great a risk of disproportionate punishment." *Miller*, 567 U.S. at 479. In *People v. Buffer*, 2019 IL 122327, our supreme court extended the constitutional protections set forth in *Miller* to juvenile defendants sentenced to more than 40 years in prison, finding that a sentence of 40 years or less provides a meaningful opportunity to demonstrate maturity and rehabilitation and obtain release. *Id.* ¶ 41.

¶ 53    Here, Valencia's sentence of 26 years' imprisonment is not a mandatory life sentence, nor is it a sentence of more than 40 years that our supreme court has determined would constitute a *de facto* life sentence. As such, Valencia's sentence does not raise the constitutional concerns expressed in *Miller* and *Buffer*. See *Woods*, 2020 IL App (1st) 163031, ¶ 57 (juvenile defendant's 33-year sentence did not raise the constitutional concerns in *Miller* and *Buffer*). Valencia's sentence, however, did include a mandatory 20-year enhancement because in committing the offense of attempted murder, he "personally discharged a firearm." 720 ILCS 5/8-4(c)(1)(C) (West 2020). Valencia, who was 17 years old when he committed the offense, argues that the mandatory firearm enhancement violates the proportionate penalties clause as

16

applied to him because it did not permit the court to give appropriate weight to his youth and rehabilitative potential.

¶ 54    This court has recently discussed this exact issue in *Woods*, where we noted that our supreme court has "clearly upheld the constitutionality of mandatory firearm enhancement provisions." *Woods*, 2020 IL App (1st) 163031, ¶ 58. "The court determined that these provisions did not violate the proportionate penalties clause because the legislature's purpose in enacting them, to account for the added danger when an offender uses a firearm in committing a felony, does not 'shock the conscience of the community.'" *Id*. (quoting *People v. Sharpe*, 216 Ill. 2d 481, 524-25 (2005)). The court in *Sharpe* reasoned that, in fixing a penalty for an offense, the potential for rehabilitation need not be given greater weight than the seriousness of the offense. 216 Ill. 2d at 525.

¶ 55    We further noted in *Woods* that in *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 41, citing *Sharpe*, this court held that the application of a 25-year mandatory firearm enhancement to a 17-year-old defendant convicted of attempted murder did not shock the moral sense of the community. In *Wilson*, while noting that the defendant had no prior convictions, had a supportive family, and felt pressured by peers to shoot the victim, the evidence showed that he "pursued the victim down an alley, raised his firearm, and shot at the victim four times before fleeing." *Id*. ¶¶ 41, 43. This court found that, although "there were certain mandatory aspects of defendant's sentence, *** the trial court retained wide latitude to fashion a sentence. *Id*. ¶ 43. We concluded that the defendant's sentence of 31 years' imprisonment did not violate the proportionate penalties clause. *Id*.

¶ 56    Similar to the circumstances in *Wilson*, the defendant in *Woods* admittedly carried a gun to a location near a high school and bus stop where he got involved in a fight, pulled out a gun

while fleeing, and then fired shots with about 30 people in the area. 2020 IL App (1st) 163031, ¶ 60. One of the shots hit an officer, who recovered from his injuries. *Id.* The trial court acknowledged the defendant's youth and his lack of a significant criminal record but found that his actions in firing the gun merited serious consequences. *Id.* This court found that the trial court exercised its discretion in sentencing the defendant, giving him little more than the minimum of 31 years. *Id.* Following *Wilson*, this court found in *Woods* that the defendant's 33-year sentence, which included a 25-year mandatory firearm enhancement, did not violate the proportionate penalties clause. *Id.*

¶ 57    Following this same reasoning, we find that Valencia's 26-year sentence, which included a 20-year mandatory firearm enhancement, did not violate the proportionate penalties clause as applied to him. The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective to restoring the offender to useful citizenship. Ill. Const. 197, art. I, § 11. This constitutional mandate calls for the balancing of the retributive and rehabilitative purposes of punishment. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). This balancing requires careful consideration of all factors in aggravation and mitigation, including "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and defendant's conduct during the commission of it." *Id.*

¶ 58    Here, the court carefully considered Valencia's youth, bipolar diagnosis, and chaotic upbringing. During postconviction proceedings, evidence was presented that Valencia was pursuing an education and vocational skills. The trial court also considered Valencia's criminal history and was able to observe his demeanor. The court further noted that Valencia pursued two defenseless brothers to their homes, and, unprovoked, fired six shots at them. One of the bullets

was recovered in the flowerbed of the brothers' apartment building, right by where the brothers were standing. Recognizing that "[t]he most important sentencing factor is the seriousness of the crime," we find that the trial court was able to exercise its discretion in sentencing defendant by giving him the minimum of 26 years in prison. *People v. Williams*, 2017 IL App (1st) 150795, ¶ 44.

¶ 59     Valencia maintains that our standard of moral decency is evolving, and that recent legislation enacted by our legislature now authorizes a trial court, in its discretion, to decline to impose any applicable firearm enhancement when sentencing a defendant who is under 18 years old at the time of the offense. See 730 ILCS 5/5-4.5-105(b) (West 2020). While we acknowledge the recent legislation, we note, as we did in *Woods*, that "there is no indication the General Assembly found that application of mandatory firearm enhancements to juvenile defendants shocked our sense of moral decency." 2020 IL App (1st) 163031, ¶ 62. The "new provision did not completely eliminate application of the mandatory firearm enhancements to juvenile defendants, nor did it make the provision retroactive." *Id*. (citing *People v. Hunter*, 2017 IL 121306, ¶ 56). "Our legislature clearly believed that, for juvenile defendants, mandatory firearm enhancements were appropriate in certain circumstances." *Id*.

¶ 60     Valencia cites three appellate court cases that found the application of an adult sentencing scheme that included a mandatory firearm enhancement, to certain juvenile defendants, violated the proportionate penalties clause. See *Aikens*, 2016 IL App (1st) 133578, ¶¶ 1, 37 (17-year-old defendant's 40-year sentence for attempted murder, which included a 20-year firearm enhancement, "shocks our evolving standard of moral decency" because defendant had no prior criminal history, was full of potential and able to rehabilitate, and had a social history that was troubling); *Barnes*, 2018 IL App (5th) 140378, ¶¶ 1, 25 (finding that the 15-year mandatory

firearm enhancement imposed on the 17-year-old defendant who committed armed robbery "shocks our evolving standard of moral decency" because the defendant had no prior criminal history, had rehabilitative potential, and did not harm anyone during the commission of the offense); *Womack*, 2020 IL App (3d) 170208 (mandatory 20-year firearm enhancement to juvenile's 18-year sentence for attempted murder was unconstitutional as applied to him where he shot the victim after the victim threatened to kill his family).

¶ 61    However, *Aikens*, *Barnes*, and *Womack* are all distinguishable. In *Barnes*, the 15-year-old defendant's weapon was not actually loaded. *Barnes*, 2018 IL App (5th) 140378, ¶ 25. In *Aikens*, the 17-year-old received a 40-year prison sentence even though he did not injure anyone and had rehabilitative potential. *Aikens*, 2016 IL App (1st) 133578. In *Womack*, the court's 20-year mandatory sentencing enhancement was unconstitutional as applied to the juvenile defendant where the defendant shot the victim during a heated argument where the victim threatened to kill the defendant's family, and the defendant's total sentence was 38 years in prison for attempted murder. *Womack*, 2020 IL App (3d) 170208, ¶ 18. In all three cases, the defendants did not have a prior criminal history. In contrast, Valencia had a prior criminal history that included shooting at an occupied vehicle. Additionally, he received the minimum sentence for firing six unprovoked shots at two defenseless brothers.

¶ 62    Our supreme court, in *Hilliard*, 2023 IL 128186, recently affirmed first-stage summary dismissal where a postconviction petitioner, aged 18 at the time of the offense, raised an as-applied challenge to the mandatory 25-year firearm enhancement added to his 15-year sentence for attempted first-degree murder. The court found *Aikens*, *Barnes*, and *Womack* distinguishable on the basis that the petitioner in *Hilliard* was an adult, not a juvenile, at the time of the offense and expressed no opinion on the merits of those cases. *Id*. ¶ 35 n.4. The supreme court also

rejected the argument that legislative changes supported the petitioner's as-applied challenge, finding it pertinent that "the legislature made a deliberate choice not to extend this discretion for individuals who were adults at the time of their offenses." *Id.* ¶ 38. Because Valencia was 17 years old and therefore a juvenile at the time of the offense, *Hilliard* does not foreclose his as-applied challenge under the proportionate penalties clause.

¶ 63    Following the Illinois Supreme Court's supervisory order vacating our prior Rule 23 order based on *Hilliard*, Valencia also cites *People v. Ellis*, 2023 IL App (1st) 221615-U[1] as further support that the 20-year firearm enhancement is unconstitutional as applied to him. However, we find *Ellis* to be distinguishable. In *Ellis*, this court recognized the decisions of *Aikens*, *Barnes*, and *Womack*, but noted that *Womack* "was issued over a strong dissent by Justice Schmidt, who reasoned in part that *Aikens* and *Barnes* had been wrongly decided. *Ellis*, 2023 IL App (1st) 221615-U, ¶ 23; *Womack*, 2020 IL App (3d) 170208, ¶¶ 26-43 (Schmidt, J., dissenting). We further noted that the reasoning in *Aikens* and *Barnes* was rejected in *People v. Woods*, 2020 IL App (1st) 163031, ¶¶ 61-63. Ultimately, we found that the juvenile defendant's constitutional claim and the facts of his case were appropriately addressed in second-stage proceedings. *Ellis*, 2023 IL App (1st) 221615-U, ¶ 25. We stated that the facts "of [the defendant's] case remain important to his as-applied challenge, but we conclude that he should have the opportunity in second-stage proceedings to develop an evidentiary record to support his claim." *Id.* We reversed the trial court's first-stage summary dismissal of the defendant's postconviction petition and remanded for further proceedings. *Id.* ¶ 27.

¶ 64    *Ellis* is inapposite to the case at bar. The defendant in *Ellis* did not discharge his firearm during the course of the armed robbery, and received 30 years in prison, including a 15-year

---

[1] Unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes." Ill S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023).

firearm enhancement. In sending the postconviction petition back for further proceedings, we stated that we "express[ed] no further position on the merits of [the defendant's] argument." *Id*. ¶ 25. Here, Valencia shot at the victims six times, and received a lesser sentence than the defendant in *Ellis*. Moreover, the defendant in *Ellis* will have to make a substantial showing of a constitutional violation at the second-stage proceedings, which is the same burden Valencia now faces. Accordingly, *Ellis* does not warrant a different result here.

¶ 65    As a final matter, Valencia argues that the truth-in-sentencing statute, which requires him to serve 85% of his sentence, does not allow the sentencing court to consider his youth and any other mitigating factors in determining his sentence, and as applied to him, prevents him from obtaining an early release based on rehabilitation. It is not entirely clear from Valencia's opening brief whether this is an eighth amendment challenge or a proportionate penalties clause challenge. However, this court has rejected similar challenges to the truth-in-sentencing statute as applied to juvenile offenders. See *People v. Watson*, 2022 IL App (1st) 192182, ¶ 23 (petitioner's as-applied challenge to the truth-in-sentencing statute must fail because requiring a juvenile to serve 100% of a term-of-years, non-*de facto* life sentence for murder does not violate the principles set forth in *Miller*); *People v. Brakes*, 2021 IL App (1st) 181737, ¶ 42 ("a juvenile defendant's sentence (whether served at 100%, 85%, or 50%) may be subject to a constitutional challenge only if it will keep the juvenile in prison for more than 40 years.") We find that Valencia's as-applied challenge to the truth-in-sentencing statute must fail because requiring a juvenile to serve 85% of a term-of-years, non-*de facto* life sentence for murder does not violate the principles set forth in *Miller*. Moreover, for a sentence to violate the proportionate penalties clause, the punishment must be "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Leon Miller*, 202 Ill. 2d at 338. We do not find that

requiring Valencia to serve 85% of his 26-year prison sentence is wholly disproportionate to the offense of attempted first degree murder of two defenseless brothers so as to shock the moral sense of the community.

¶ 66                                  III. CONCLUSION

¶ 67    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 68    Affirmed.